[Civ. No. 56081. Second Dist., Div. Four. May 16, 1980.]

In re the Marriage of CAROL J. and ALVIN G. SCHULTZ.
CAROL J. SCHULTZ, Respondent, v.
ALVIN G. SCHULTZ, Appellant.

**COUNSEL**

Alvin G. Schultz, in pro. per., for Appellant.

G. Nicholas Vaters, Jr., for Respondent.

## OPINION

**JEFFERSON (Bernard), J.*** —In 1976, Carol Schultz, as petitioner, sought dissolution of her 13-year marriage to Alvin Schultz. There were two minor children of the marriage, Wendy, aged 13, and Eric, aged 7. The parties were experiencing severe financial stress occasioned by the fact that they were average wage-earners with a relatively modest income and accumulated debts of over $20,000. The only asset owned by the parties of any consequence was the family residence, which had greatly increased in value during the marriage with the result that, at the time of dissolution, the parties had a substantial equity in the home.

After a contested hearing on July 22, 1977, Carol was awarded an interlocutory judgment of dissolution. The interlocutory judgment, filed November 8, 1977, contained a paragraph three, directing the parties to cooperate concerning the sale of the family home, and a paragraph twelve, which provided that funds derived from the sale of the family residence were to be placed into the trust account of petitioner's attorneys and certain listed community debts were to be paid before any distribution was to be made to the parties. Approximately 18 debts were then listed with the name of the creditor and the amount owed; it was recited that "[u]pon payment of said community debts the parties are to receive an equal division of the remaining assets with the Petitioner to be given a $1,925.00 credit against those remaining assets."[1]

Despite some difficulty in securing Alvin's cooperation, apparently the family home was listed for sale sometime before the end of 1977, and sold. However, in April 1978, Carol brought an order to show cause *in re* contempt against Alvin, charging that, although the escrow had closed on March 31, 1978, Alvin had refused to indorse the check which represented the proceeds of the sale and was thereby "wilfully" impeding disbursement of the funds to the community creditors; Carol's car had been repossessed; Alvin was $975 behind in child support pay-

---

*Assigned by the Chairperson of the Judicial Council.

[1]Nothing in the record explains the basis for this credit. The record on appeal does not contain any reporter's transcript of the contested proceeding which led to the award of dissolution to petitioner or the listing of the community creditors with the amounts owed. The clerk's transcript reveals that throughout this litigation, which also encompassed problems of custody, visitation rights and child support, counsel for the parties tended to negotiate in chambers without the court reporter present, a practice which directly affects proper appellate review.

ments. At a hearing on May 5, 1978 (reported here), Alvin appeared without counsel and asked for a continuance to obtain one, stating that he needed representation to challenge some of the proposed distributions to community creditors. The trial court indicated that if he would sign the escrow check, he would have an opportunity at a later hearing to present his objections to the distribution. Apparently Alvin then indorsed the escrow check. The matter was continued to June 27, 1978.

During this period, Carol's attorney had prepared an "Accounting," a copy of which appears in the clerk's transcript with no indication of when, if ever, it was filed with the court.[2] It shows that the net proceeds from the escrow were $43,842.92. Debts payable (varying somewhat in amount and creditor from the list contained in the interlocutory judgment) of $20,831.70 were listed, leaving a residue of $23,011.22. From this sum, it was proposed that $3,769.67 be "taken off the top" as owed to Carol; this consisted of the $1,925 credit mentioned in the interlocutory judgment and $1,844.67 for payments Carol had purportedly made on the community indebtedness after entry of the judgment. This left the sum of $19,241.55 to be divided equally between the parties, i.e., $9,620.77 was due each of them, according to the "Accounting." However, by the process of crediting Carol with $1,000 for the Blasco judgment (which shall be discussed hereinafter), $825 for child support arrearages, and $57 for a medical bill paid by Carol, it was claimed that Carol was entitled to $11,502.77, while Alvin, whose share was lessened by these credits, and also charged with $500 owed to Carol's attorney, was entitled to $7,238.77.

On June 27, 1978, a hearing was held to resolve issues raised by the proposed "Accounting." Alvin was present with counsel, as was Carol. It seems clear that Alvin was less than happy with the proposed distribution. While we have a transcript of proceedings held in the courtroom, it appears that the counsel for the parties presented the issues to the trial court in chambers, a presentation unreported here. Nor does the transcript contain any summary of, or stipulations relating to the *in camera* proceedings; thus the *in camera* proceedings do little to clarify Alvin's objections to distribution as proposed in the "Accounting" document.

---

[2] It seems clear that this document was in some fashion brought to the trial court's attention, as it was used as the basis at a subsequent hearing in connection with Alvin's objections to the proposed distribution.

The result of the hearing was that "the matter stands submitted" and (apparently) the trial court had directed Alvin's counsel to prepare an order which reflected certain adjustments in the "Accounting," adjustments which had been discussed *in chambers* as well as certain findings of the trial court (also unrecorded). The order was prepared, approved by Carol's counsel, and filed with the trial court on August 7, 1978; it was subsequently signed by the trial judge. The order declared that certain obligations were community in nature, made one adjustment in Alvin's favor, and also stated that "[t]he court finds that until the Respondent [Alvin] presents verification contrary to the validity of said payments in the amounts paid by the petitioner's attorney, said payments are valid, deductions out of the parties' community property assets. The court *retains jurisdiction* for purposes of allowing the Respondent to present to the Court verification contrary to validity of said payments." (Italics added.)

Alvin has appealed from this order, taking exception to three specific provisions thereof.

I

*Appealability of the Accounting Order
and the Effect of Respondent on
Appeal Not Filing a Brief*

Of preliminary concern to us here is whether the order made below "adjusting" the "Accounting"—and resolving most of the objections made to it in Carol's favor—is one from which Alvin may take an appeal.

Code of Civil Procedure section 904.1 provides, in pertinent part, that an appeal may be taken from a superior court in the following cases: "(a) From a judgment, *except* (1) an interlocutory judgment, *other than* as provided in subdivisions (h), (i) and (j),...[Subd. (j) refers to "an interlocutory judgment of dissolution of marriage"] [¶] (b) From an order made *after* a judgment made appealable by subdivision (a)." (Italics added.)

Obviously an appeal could have been taken from the interlocutory judgment of dissolution; but we are dealing here with a postjudgment order which appears to meet the criteria for an appealable order. As it is explained in 6 Witkin, California Procedure (2d ed. 1971)

section 81, pages 4091-4092, "there are three limitations [on the appealability of postjudgment orders]: [¶] *First*, the order 'must *affect the judgment* in some manner or bear some relation to it either by way of *enforcing it* or *staying its execution.*' ... [¶] *Second*, if the appeal from the order after judgment would present the same questions as an appeal from the judgment itself, the order is not appealable.... [¶] *Third*, the 'judgment' which this order follows must be a *final* judgment in the sense of finality in the trial court." (Italics in original.)

■ The order adjusting the accounting both affects and enforces the dissolution judgment. However, it does not present exactly the same issues because it is postjudgment determinations of which Alvin here complains.

The "reservation of jurisdiction" contained in the order is meaningless in our view and does not affect the order's appealability; the trial court may not, by such reservation, preclude appellate review of an order which is in reality final. Alvin's notice of appeal from the order, which specified his points of disagreement, indicates his desire to obtain a review of the order *as it stood.* We presume that, as with a demurrer, on occasion, Alvin had nothing to present below in a further hearing, but has elected to proceed here. Without any action on his part, the order does affect, with finality, the distribution of the remaining community assets.[3]

The fact that Alvin may have received that distribution does not affect his right to appeal, because "a party who is awarded less than he has demanded may appeal from the unfavorable part of the judgment." (6 Witkin, *supra*, § 121, p. 4118.) In addition, we draw no inference unfavorable to Alvin from the fact that his own counsel drew the order from which he has appealed. The record does not show that Alvin gave his counsel the authority to make any concessions on his behalf (Code Civ. Proc., § 283), i.e., there is nothing in the minutes of the court which so indicates, and the record is void of any inference except that the trial court directed Alvin's counsel to draft an order reflecting the "in chambers" resolution of the issues *by the court.*

---

[3]We are in effect treating the order appealed from as a *modification* of the "Accounting" and of the interlocutory judgment; the "Accounting" should, in the interests of orderly procedure in matters such as this, have been incorporated by reference into the interlocutory judgment by appropriate motion to modify, and the "adjustment" of that "Accounting" should have been presented to the court also in the context of a motion to modify.

Alvin has appeared here in propria persona and has filed an opening brief. Carol has not filed a responsive brief, but communicated to the court a nonwaiver of oral argument. Under these circumstances, rule 17(b) of the California Rules of Court applies to this appeal.[4] **(3)** It was said in *Votaw Precision Tool Co.* v. *Air Canada* (1976) 60 Cal. App.3d 52, 55 [131 Cal.Rptr. 335], that "[r]espondent has not filed a brief and thus rule 17(b) of the California Rules of Court is applicable to this appeal. Courts have differed in the application of this rule with some taking a strict view and holding that the failure to file a brief was in effect a consent to a reversal [citation] or an abandonment of any attempt to support the judgment. [Citation.] Since the burden is always on the appellant to show error, other courts have taken the position that the failure to file a brief does not require an automatic reversal. [Citations.] The better rule and the one which we follow is to examine the record on the basis of appellant's brief and to reverse only if prejudicial error is found. [Citations.]" (See also *Kriegler* v. *Eichler Homes, Inc.* (1969) 269 Cal.App.2d 224, 226-227 [74 Cal.Rptr. 749].) We adopt the rule described in *Votaw* as being the better rule.

II

*The Handling of Community Indebtedness*
*in Dissolution Actions*

With respect to community indebtedness, there has been little general discussion of it since 1970 and the passage of the Family Law Act, perhaps because the financial stress which generates such issues ordinarily operates to preclude the cost of appellate review. The general principle applicable to community indebtedness, however, is clear: "In dividing the community property equally under the mandate of Civil Code section 4800, subdivision (a), the court must distribute both the assets and the obligations of the community so that the residual assets awarded to each party after the deduction of the obligations are *equal*." (*In re Marriage of Fonstein* (1976) 17 Cal.3d 738, 748 [131 Cal.Rptr. 873,

---

[4]That rule provides: "If the respondent's brief is not filed within the time prescribed in subdivision (a) of rule 16, the clerk of the reviewing court shall notify the parties by mail that the case may be submitted for decision on the record and on the appellant's opening brief unless the brief is filed within 30 days after the date of mailing of the notification or good cause is shown for relief. If the brief is not filed within that period . . ., the court may accept as true the statement of facts in the appellant's opening brief and, unless the appellant requests oral argument, may submit the case for decision on the record and on the appellant's opening brief."

552 P.2d 1169].) (Italics added.) The case of *In re Marriage of Eastis* (1975) 47 Cal.App.3d 459, 463, footnote 2 [120 Cal.Rptr. 861], dealt with the situation where community indebtedness exceeds community assets—the not uncommon "bankrupt family"—described so cogently in the following terms: "The real crunch was in deciding just who was going to pay Seaboard Finance." The *Eastis* court concluded that, in the "no assets" situation, the Family Law Act did *not* mandate equal division of the community indebtedness, but, rather, that "the court has the discretion to order the payment of such obligations in a manner that is just and equitable, depending upon the respective earning capacities of the spouses and other relevant factors." (*Id.* at p. 464.)

■ In the case at bench, since assets did exceed liabilities, the general rule applied. It follows that the trial court had no discretion to adjust the division of the residual assets to reflect equitable considerations. Alvin, however, does not contest the accounting as a whole, but only certain items, which we shall now discuss.

III

*The Blasco Judgment*

■ A debt of $4,250, owed to one Conrad Blasco, was listed in the interlocutory judgment as a debt of the community; its nature is not disputed by Alvin. Creditor Blasco became tired of awaiting voluntary payment, and sought judgment against Alvin in a municipal court action. Alvin appeared there in propria persona but apparently failed to go to court on the trial date; Blasco obtained a default judgment. The "Accounting" made by Carol's attorney lists that judgment as a debt of $5,000. The order adjusting the accounting recites: "The Court finds that the Respondent [Alvin] represented himself as pro per in suit filed against him by one, Conrad Blasco, and therefore engendered the duty of informing the Court in which said suit was filed of his new address where Notice of Trial date should have been sent." On this basis, the trial court assigned $1,500 of the indebtedness to Carol, and the remainder ($3,500, approximately) to Alvin.

Alvin argues here that his address was the family residence during this period, whether he was living there or not; implicit in his claim is that no negligence with respect to this obligation should have been attributed to him by an unequal division of the debt. We agree.

Civil Code section 4800, subdivision (a), mandates equal division of assets, and, in subdivision (b), states that, as an exception to equal division, "the court may award, from a party's share, any sum it determines to have been *deliberately misappropriated* by such party to the exclusion of the community property...." (Italics added.) But nothing is said in the statute about negligence. The term "deliberate misappropriation" has reference to calculated thievery by a spouse, not the mishandling of assets.

We perceive that the same distinction should be made with respect to *debts.* There may be situations in which a spouse may be held responsible as a fiduciary for *gross* mishandling of community financial affairs which would be tantamount to fraud, but, in the case at bench, the circumstances surrounding the misdirection of a notice of trial do not warrant the imposition by the trial court upon one spouse of what amounted to a penalty, charging Alvin's share of residual assets with more than one-half of the debt. Nor does the fact that Alvin chose not to hire a lawyer to represent him in the municipal court, in and of itself, establish culpability. We find no basis for the trial court's determination that equity required an unequal division of the Blasco debt. Hence, the order containing that ruling was erroneous.

## IV

### *Interest on the Schultz Loans*

Alvin next complains that repayment of certain loans to his mother and brother did not, but should have, included interest. The interlocutory judgment and the "Accounting" both listed payments due of $4,000 to Kenneth E. Schultz and $7,500 to Marcella Schultz.[5] Alvin claims that certain checks, entered into evidence at the contested hearing on the dissolution, proved that the loans included interest. However, there is nothing before us which establishes anything about either loan

---

[5]The order adjusting the "Accounting" recites that "[t]he Court finds that the issues presented to it relative to whether interest owing on the Marcella Schultz and the Kenneth Schultz debts are to be borne by the community are moot as they have been previously decided by this Court to not be owed by the community."

This finding, of course, is contrary to what is contained in the interlocutory judgment and in the "Accounting" prepared by Carol's attorney, both of which showed the Schultz relatives as community creditors. The order appears to be erroneous on its face, either as the result of sloppy drafting or sloppy discussion of the issue in chambers, or perhaps both.

except the amounts owed and to whom; we know not whether the indebtedness was created by written promissory notes or by handshake; we do not know what terms were imposed on the borrowers.

Alvin relies on Civil Code section 1914, which provides that "[w]henever a loan of money is made, it is presumed to be made upon interest, unless it is otherwise expressly stipulated at the time in writing." The presumption of Civil Code section 1914 was, we assume, overcome in some fashion at trial of the dissolution issue, and that the trial court refused, when considering adjustments in distribution, to alter the amounts shown previously. Our review of the June 27, 1978, hearing transcript, at which time Alvin, represented by counsel, had the opportunity to present evidence, shows nothing on the record to substantiate his claim of interest owed. Given this circumstance, Alvin's claim of error must fail.

A subissue raised by Alvin relates to his contention that he asked for and was refused a continuance on May 5, 1978, to obtain counsel to litigate the interest issue, and that an abuse of discretion on the part of the trial court occurred. The record shows that the hearing on May 5, 1978, concerned Alvin's refusal to sign the escrow check. This refusal was in part due to his feeling that distribution of the proceeds was going to be made without taking into account his objections to the proposed distribution. The trial court indicated that if he would sign the check, a further hearing would be held to attempt to resolve the differences of the parties concerning distribution; such a hearing was held on June 27, 1978; we find no abuse of discretion by the trial court's failure to continue the May 5, 1978, hearing.

## V

### The Credit of $1,844.67

■ Alvin contends that there was insufficient evidence to support the trial court's finding that Carol was entitled to a credit of $1,844.67, a determination included in the order "adjusting" the "Accounting" and based upon payments assertedly made by Carol to community creditors between the time of the interlocutory judgment and the hearing of June 27, 1978. Alvin points out—and correctly so—that the reporter's transcript demonstrates that no documentary evidence was admitted into evidence at the hearing to support Carol's claim, and that Carol herself

never directly testified *on the record* that she had in fact paid this amount. Nor was there any stipulation of the parties concerning this credit. On the contrary, Alvin's counsel cross-examined Carol and objected to the introduction of proffered evidence in support of her claim.

We have no doubt that, from the tenor of the proceedings, had Carol been asked, she could have provided, by her own testimony, the substantial evidence required to support the determination that she was entitled to the credit. The problem is that she was not asked the appropriate questions, and the review of the record reveals nothing from which we are entitled to draw the appropriate inference.

Alvin also claims it was error for the trial court to allow Carol to testify, as she did, to borrowing funds from her present husband to pay certain small payments included in the whole. This claim of Alvin is lacking in substance, as it was immaterial where petitioner obtained the funds used to extinguish a portion of the community indebtedness and irrelevant in determining her entitlement to such a credit.

We have referred throughout our discussion here to the importance of an appropriate *record* being made in the trial court. That record, of course, may consist on occasion of the fruits of in-chambers negotiation, but stipulations made in chambers must appear in the reporter's transcript, as must the basic evidence supporting the trial court's determinations. Trial judges must be alert to insist upon it; counsel for the parties should be equally alert to their respective duties to their clients. In the absence of an appropriate record below, we must hold that there is no support for the trial court's finding that Carol was entitled to a credit of $1,844.67.

## VI

### *Disposition*

Code of Civil Procedure section 908 provides that "[w]hen the judgment or order is reversed or modified, the reviewing court may direct that the parties be returned so far as possible to the positions they occupied before the enforcement of or execution on the judgment or order. In doing so, the reviewing court may order restitution on reasonable terms and conditions of all property and rights lost by the erroneous judgment or order, so far as such restitution is consistent with rights of

third parties and may direct the entry of a money judgment sufficient to compensate for property or rights not restored. The reviewing court may take evidence and make findings concerning such matters or may, by order, refer such matters to the trial court for determination."

The order from which Alvin's appeal has been taken must be modified below to show (1) an equal division of the Blasco debt and (2) the denial of a credit of $1,844.67 to Carol, an adjustment of approximately $2,000 in favor of Alvin, and such order should constitute a modification of the interlocutory judgment.

Upon issuance of the remittitur, the trial court, pursuant to respondent Alvin's motion, shall hold a modification hearing. At that hearing, it shall determine whether distribution of the residual community assets has been made pending this appeal; and, if so, the order shall include an "Accounting" setting forth to whom and in what amounts such assets have been distributed. Such order shall be a modification of the interlocutory judgment of dissolution.

If distribution has already been made, the trial court shall also determine the exact amount owed to Alvin, consistent with this opinion, and shall further determine the manner, on "reasonable terms and conditions," in which Carol is to make restitution to Alvin. That determination shall also be made as a modification of the interlocutory judgment.

The judgment (order) is reversed with directions to the trial court to modify the interlocutory judgment to reflect the determinations made here in favor of appellant Alvin G. Schultz after holding a further hearing in accordance with the views expressed in this opinion.

Each party shall bear its own costs on appeal.

Kingsley, Acting P. J., and McClosky, J.,* concurred.

A petition for a rehearing was denied June 5, 1980.

*Assigned by the Chairperson of the Judicial Council.