[Civ. No. 6779. Fifth Dist. Sept. 29, 1983.]

In re the Marriage of IDA MAE and RICHARD JACK STITT.
IDA MAE STITT, Appellant, v.
RICHARD JACK STITT, Respondent.

582

COUNSEL

Deadrich, Bates & Tutton and Thomas Tutton for Appellant.

Simrin & Moloughney and Stanley Simrin for Respondent.

OPINION

**WOOLPERT, J.**—This appeal presents us something old and something new. The old issue is whether a premarital couple may make as binding an oral agreement to own all future acquired property equally, irrespective of record title as may their married counterparts. Here, where the parties have relied on their agreement, we affirm the judgment holding the family home to be community property, even though some time prior to separation the parties had deeded it to the wife as her separate property. The new issue is whether the community should be responsible for unpaid attorney fees incurred by the wife for her defense against embezzlement charges in criminal and civil litigation. We affirm the judgment holding her solely responsible.

Prior to their marriage, husband and wife entered into an express oral agreement to live together and combine their efforts and earnings. Wife testified they agreed to equally split the cost and be coowners of unimproved property on Hageman Road, but when husband did not tender his share of the money, they amended the escrow instructions which originally were to vest title in both of them. However, husband testified, and the court so found, that he had given wife $3,600 cash towards the purchase price of $7,250.

Title to the Hageman Road property was acquired in the name of wife as an unmarried woman. Wife applied for and was granted a loan for $36,000 in her name as an unmarried woman. She then contracted to have a house built on the property. When it was completed, the couple moved into the house. With the exception of five payments made from her separate account, all the loan payments were made from the couple's joint account. Husband worked on some of the improvements to the property, such as installing an irrigation system and building fences. He also purchased plumbing supplies and a water pump for the property with his separate funds.

Husband and wife were married a few months later. Wife then deeded the Hageman Road property to husband and wife as joint tenants. At trial, wife explained that she asked for a $1,000 loan from husband as additional financing for improvements on the property; he gave her the money on the condition that she put his name on the deed. She never intended that he should be half owner of the property and maintained he signed a quitclaim deed two months after she repaid the $1,000.

Two and a half years passed. Husband and wife then deeded the Hageman Road property to wife, "an unmarried woman." Husband explained he signed the deed because wife advised him it would be prudent, "in preparation for the trial that she was about to go through." Because he assumed that his right to the property would be restored when the case was over, he did not believe he was giving up his right to his share when he signed the deed. Until wife filed the petition for dissolution of marriage, husband continued to believe he was an equal co-owner of the Hageman Road property.

Payments on the loan continued to be made from the parties' joint account until they separated and wife filed the petition for dissolution of the marriage. The balance on the loan at that time was $34,504.33. After separation, wife made the payments from her separate property but continued to live on the property without paying rent to the community.

The court found the property was community in its entirety. It found husband had contributed to the purchase price and contributed labor in maintaining the property, and further found that the parties had purchased the property intending that it belong to both of them jointly. Husband allowed wife to take title to the property in her own name in reasonable reliance on her representations, and was led to believe he was an equal owner of the Hageman Road property until wife initiated dissolution proceedings.

Wife worked as a manager at Zingo's, Inc. Zingo's filed suit against her for fraud and misappropriation of funds. When that suit was settled, wife

agreed to pay Zingo's, Inc., $15,000 in cash and to give up all her Zingo's stock and undistributed dividends. Wife was tried and convicted of embezzlement. As a condition of probation, she was ordered to pay $15,000 restitution in compliance with the terms of the civil settlement.

Separate law firms represented wife in the civil and criminal proceedings. Wife's separate property was sold to raise funds for payment of restitution to Zingo's. Husband issued two checks from the joint account as partial payment of attorney fees, one for $1,287.68 and the other for $3,000. Finally, after the parties separated, wife executed a second trust deed on the Hageman Road property in favor of the two law firms for $10,989.20 owed them.

The court found the obligations for attorney fees were incurred during the marriage and were attributable to wife's defense in the civil and criminal actions and the sale of her separate property. It further found the obligations to the law firms were wife's separate obligation.

■ Wife argues the trial court erred in determining the Hageman Road property was community in its entirety. She contends the property is partially her separate property and that the court should have made an apportionment using the formula given in *In re Marriage of Moore* (1980) 28 Cal.3d 366, 373 [168 Cal.Rptr. 662, 618 P.2d 208]. Because the building construction loan was in her name alone, she argues the proceeds of the loan were her separate property. Although after marriage the property was transferred to husband and wife as joint tenants, she argues this did not transmute the separate property to community property and there was no evidence she intended a gift of her separate property.

At the time the property was acquired, husband and wife were living in a marriage-like arrangement pursuant to a *Marvin* agreement. (*Marvin* v. *Marvin* (1976) 18 Cal.3d 660 [134 Cal.Rptr. 815, 557 P.2d 106].) ■ Unmarried cohabitants may enter into express or implied contracts respecting their property rights and earnings, and the court may enforce those contracts. (*Id.*, at p. 674; *Estate of Fincher* (1981) 119 Cal.App.3d 343, 349 [174 Cal.Rptr. 18]; *In re Marriage of Leib* (1978) 80 Cal.App.3d 629, 642 [145 Cal.Rptr. 763].) The rights which have arisen in the premarital period remain enforceable after marriage. (*Watkins* v. *Watkins* (1983) 143 Cal.App.3d 651, 653 [192 Cal.Rptr. 54].)

■ Here, on substantial evidence, the court found husband and wife made an express premarital oral agreement to pool and share their resources and be equal owners of property acquired. It further found they purchased the Hageman Road property with the understanding that they both owned

it, and that husband contributed almost half the purchase price, notwithstanding the form of the deed.

Wife argues the building construction loan was in her name only and that the lender's intent with respect to the credit on which the loan is made is determinative of the character of the proceeds, citing *Ford* v. *Ford* (1969) 276 Cal.App.2d 9, 12 [80 Cal.Rptr. 435]. However, *Ford* also states that if money for the purchase of property is obtained on the credit of the community estate, the result is a community purchase. (*Ibid.*) The unimproved Hageman Road property was "community" in the sense that between the parties it was owned equally. Therefore, it was community property for purposes of determining the basis for extending credit. (*Guerin* v. *Guerin* (1957) 152 Cal.App.2d 696, 708 [313 P.2d 902].)

When the Hageman Road property was deeded after marriage to husband and wife as joint tenants, its community character was reinforced. The presumption in Civil Code section 5110[1] applies: "When a single-family residence of a husband and wife is acquired by them during marriage as joint tenants, for the purpose of the division of such property upon dissolution of marriage or legal separation only, the presumption is that such single-family residence is the community property of the husband and wife. . . ." Although wife argues there was no evidence she intended a gift of her separate property, absent evidence to rebut the presumption that the Hageman Road property was acquired by husband and wife as community property, the presumption applies.

■ In November 1977, husband and wife transferred the property to wife "as an unmarried woman," triggering the rebuttable presumption that the parties intended to hold the property according to its record title. (*Gudelj* v. *Gudelj* (1953) 41 Cal.2d 202, 212 [259 P.2d 656]; *Knego* v. *Grover* (1962) 208 Cal.App.2d 134, 141 [25 Cal.Rptr. 158].) The form of the instrument was not conclusive of the status of the property. The presumption may be rebutted by evidence of an understanding or agreement to the contrary. (*In re Marriage of Lucas* (1980) 27 Cal.3d 808, 815 [166 Cal.Rptr. 853, 614 P.2d 285].) Whether the presumption was rebutted was a question of fact for the trial court and is binding on the reviewing court unless manifestly without support in the evidence. (*In re Marriage of Mix* (1975) 14 Cal.3d 604, 612 [122 Cal.Rptr. 79, 536 P.2d 479]; *Schmedding* v. *Schmedding* (1966) 240 Cal.App.2d 312, 316 [49 Cal.Rptr. 523].)

■ In transferring the property to wife, the trial court found husband relied on wife's representations that the property would be conveyed back

---

[1]All statutory references are to the Civil Code unless otherwise indicated.

to husband and wife after resolution of the Zingo's litigation. The property remained community in nature although the form of title indicated otherwise. (Cf *Guerin* v. *Guerin, supra,* 152 Cal.App.2d 696, 709.) The acts of the parties indicated they understood it would remain community. The loan payments continued to be made from the joint account; husband testified he would not have allowed his money to be used to make payments on the property had he known he did not share any interest in it. ▮ Although wife presented conflicting evidence, the trial court is allowed to make determinations of credibility and an appellate court is bound by the trial court's findings regarding the separate or community character of assets if those findings are supported by substantial evidence. (*In re Marriage of Tucker* (1983) 141 Cal.App.3d 128, 132 [190 Cal.Rptr. 127]; *In re Marriage of Trantafello* (1979) 94 Cal.App.3d 533, 546 [156 Cal.Rptr. 556].) Ample evidence supports the trial court's finding.

We repeat the facts relating to the attorney fees in simplified form. Wife embezzled from employer. The time period from the first embezzlement to the last is unclear in relation to the premarital and marital time period and there is no evidence the embezzlement jointly benefited husband and wife. We are not concerned with an unproved charge of misconduct or the responsibility of the community in that situation to bear the cost of defense. The attorney fee obligation of $10,989.20 had to be paid from the sale of the Hageman Road property because the wife had personally signed a note and executed a second trust deed against the property while title was in her name only. Husband's sole participation was in previously drawing two checks on the joint account to retain wife's counsel. The checks were insufficient to make him contractually responsible for payment of future fees without reimbursement from wife. In fact, the sum evidenced by the note was not billed by the attorneys until after the separation.

We are not concerned with an obligation arising during marriage which depends upon current earnings for its existence, such as prior spousal or child support. (*Weinberg* v. *Weinberg* (1967) 67 Cal.2d 557, 562-564 [63 Cal.Rptr. 13, 432 P.2d 709]; *In re Marriage of Smaltz* (1978) 82 Cal.App.3d 568, 570-572 [147 Cal.Rptr. 154].) Neither is this a case in which one spouse improves separate property and is required to reimburse the community. (*Somps* v. *Somps* (1967) 250 Cal.App.2d 328, 338 [58 Cal.Rptr. 304].) There is no evidence wife retained any separate estate after the civil suit was settled.

▮ Wife argues the attorney fees incurred during the marriage for her defense in the Zingo's case should be regarded as a community debt and that payment should therefore be taken from the community property as a whole, rather than from her share of the community proper-

ty. ▇ Ordinarily, if a married person employs an attorney, the contractual obligation to the attorney would be the responsibility of both spouses. The community property is liable for contracts made by either spouse after marriage under section 5116. ▇ In his argument, husband concedes the community is liable for the contractual obligation to the attorneys but contends that between the parties the court could find the obligation was wife's alone. He relies on section 5122, which states that a married person is generally not liable for damages caused by a tortfeasor spouse.[2]

We use the term "community obligation" for convenience. It has been said that there are no separate debts as distinguished from community debts. (*Weinberg* v. *Weinberg, supra,* 67 Cal.2d 557, 563; *Wilson* v. *Wilson* (1948) 33 Cal.2d 107, 111 [199 P.2d 671].) However, for practical purposes the spousal obligations are to be viewed first from the creditor's standpoint, which may encompass both community and separate property, then from the standpoint of the spouses who are interested not only in the equal division of the community property and liabilities but also in preventing a "separate debt" of one spouse from being included in the shared community obligations. (See *In re Marriage of Epstein* (1979) 24 Cal.3d 76, 89 [154 Cal.Rptr. 413, 592 P.2d 1165].)

▇ Between the spouses, certain obligations which are properly characterized as separate may be assigned to the responsible person if unpaid, or reimbursement may be ordered in favor of the community if the debt was paid from community assets. For example, improvements to separate property may be ordered reimbursed (*In re Marriage of Walter* (1976) 57 Cal.App.3d 802, 806-807 [129 Cal.Rptr. 351]) and an obligation arising from the purchase of "anticipated" future separate property may be assigned to the purchasing party (*In re Marriage of Mahone* (1981) 123 Cal.App.3d 17 [176 Cal.Rptr. 274]).

▇ Because husband did not participate in wife's embezzlement and no benefit to the community was shown, section 5122 required the employer to first look to the wife's separate property for recovery. Once that was done, section 5122, subdivision (b)(2), allowed the employer and the attorneys to satisfy their claims from the community property. We see no reason to differentiate between a creditor who litigates and executes on a judgment

---

[2]*The relevant portions of section 5122 read as follows:*

"(a) A married person is not liable for any injury or damage caused by the other spouse except in cases where he would be liable therefor if the marriage did not exist.

"⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯

"(b) (2) If the liability of the married person is not based upon an act or omission which occurred while the married person was performing an activity for the benefit of the community, the liability shall first be satisfied from the separate property of the married person and second from the community property.

and one who agrees to take a note secured by a trust deed on community property. In either event, the husband's community interest in the Hageman Road property was at risk, there being no remaining separate property of the wife.

Although husband's interest in the Hageman Road property was at risk from the creditor's standpoint, in the settlement of marital rights the court could seek an equitable result because of the separate nature of the obligation. In this instance the court found it appropriate to assign the full financial responsibility for the wife's embezzlement to the wife, preventing her assertion of "community debt" from diminishing husband's share of the community property. This was consistent with the general principle found in section 1714 that the actor is solely responsible for wilful and negligent acts unless shared, mitigated or excused because of other principles of law.

Returning to section 5122, we find a legislative direction that between the spouses the mere fact of marriage should not change the usual rules of personal responsibility for the consequences of criminal or tortious activity. Although the section spells out the order in which creditors may satisfy tort claims from the property of the spouses, it does not forbid one spouse from later disclaiming responsibility for the tort liability of the other in a dissolution proceeding. Section 5116 likewise provides that community property may be liable for the contracts of either spouse. ■ However, it does not prevent the assignment of the contractual obligation to one spouse if the court is presented with a proper basis for so doing, e.g., payment of income taxes on separate income. (See *In re Marriage of Epstein, supra,* 24 Cal.3d 76, 89.)

■ We are reminded that there is a principle that one takes a spouse "for better or worse." This may be so. Because of the continuing nature of the marital relationship, principles of waiver, condonation and laches would in most cases prevent any belated attempt at the time of dissolution proceedings to seek an accounting of all community property losses attributable to the independent delicts of the spouses. Here, however, the court had conclusive evidence of recently committed criminal activity which culminated in financial consequences at the time the marriage was coming to an end. No principle of law required the innocent spouse to share the loss created by the other party. Husband had not waived his right to receive his share of the community property free from any loss attributable to wife's separate conduct. Therefore it was proper for the court to make orders which carried out the law's intention that only responsible participants in crime or tort bear the loss.

The judgment is affirmed.

Andreen, Acting P. J., and Martin, J., concurred.