[No. G002553. Fourth Dist., Div. Three. May 31, 1989.]

In re the Marriage of CLAUDIA H. and CLEMENT L. HIRSCH.
CLAUDIA H. HIRSCH, Respondent, v.
CLEMENT L. HIRSCH, Appellant.

**COUNSEL**

Robinson & Davis, Friedemann, La Scala, Keto & Fingal, Michael W. Robinson and William A. Reppy, Jr., for Appellant.

Drummy, Garrett, King & Harrison, Howard F. Harrison, John C. Murphy, Urland, Morello, Dunn & Maynard, Michael L. Halpern and Randall S. Waier for Respondent.

OPINION

**WALLIN, Acting P. J.**—Husband appeals from an order denying his motion to classify certain debts satisfied with his postdissolution separate property as community obligations.

Claudia Mirken and Clement Hirsch were married in 1963 and separated in 1970. Prior to and during the marriage, Clement owned shares of stock in the Bank of Los Angeles and served on its board of directors. In 1966, the bank merged with United States National Bank (USNB) and Clement's shares were converted into USNB stock. Clement sat on the new board of directors from January 1966 until March 1971, six months after the parties had separated.

In November 1973, the trial court entered an interlocutory decree dividing the community property. The decree contained an express reservation of jurisdiction to divide community property or pay community debts not then known or established.

Shortly thereafter, USNB collapsed, and Clement learned he had been named as a defendant in two federal court actions alleging various statutory and contractual causes of action, plus negligence and intentional misconduct as a director of USNB. Clement promptly moved to establish a community reserve from which any ultimate liability arising out of the actions could be satisfied. The court denied the motion on the basis that Clement's liability, if any, was too uncertain at that time. It stated Clement could seek reimbursement from Claudia for her contributive share at a later date.

Thereafter, a third lawsuit was filed against Clement arising out of his tenure on the USNB board. Clement then sent an accounting to Claudia's counsel of the funds expended by him in defense of the USNB litigation and requested reimbursement for one-half that amount. The letter also stated, "Settlement negotiations are on-going, and if a reasonable settlement of the law suits [sic] and claims are made, Mr. Hirsch will look to [Claudia] for a contribution of one-half of any amounts payable pursuant to such settlement." Claudia responded by disclaiming any financial responsibility for the USNB lawsuits and making clear she did not wish to participate in any settlement negotiations.

Upon the advice of counsel, Clement settled all three lawsuits and moved for a postjudgment order declaring the settlement amounts and expenses of defense community debts. He sought reimbursement for $423,130.19, one-half the amount he expended in settling the lawsuits, including attorney's fees and costs.

Believing Civil Code section 5122 to be the applicable statute[1] for determining the character of the settlement obligations, Clement presented testimony that his reason for serving on the board of USNB was to benefit the community. He said he agreed to sit on the USNB board and various other boards because the positions were prestigious, challenging and offered the potential to develop contacts in the business community. The parties stipulated Clement's USNB director's salary constituted community income.[2]

Jacob Shearer, the attorney who represented Clement in the USNB lawsuits, testified he believed Clement's exposure to liability was limited to the negligence causes of action. Apparently there had been an article in the Wall Street Journal which Shearer believed should have put the board on notice of the problems which eventually led to USNB's collapse. In Shearer's opinion, Clement's failure to heed the warnings constituted "gross negligence." However, he did not feel Clement was exposed to any liability for the alleged intentional torts. At the most, he felt Clement's exposure amounted to continued malfeasance in ignoring instances of self-dealing by C. Arnholt Smith, the owner of USNB, and ignoring the Journal article. Shearer testified one of the lawsuits was nothing more than a "strike suit"[3] and that he recommended settlement of all three lawsuits because defense costs alone would exceed $1 million.

Claudia presented little evidence in support of her contention the settlement obligations should be characterized as Clement's separate debt. Her attorney testified the causes of action in the USNB lawsuits were based primarily on intentional conduct by Clement.[4] In addition, the court had before it Claudia's earlier declaration stating she urged Clement to resign from the board but he refused.

---

[1] Civil Code section 5122 provides, "(a) A married person is not liable for any injury or damage caused by the other spouse except in cases where he or she would be liable therefor if the marriage did not exist. [¶] (b) The liability of a married person for death or injury to person or property shall be satisfied as follows: [¶] (1) If the liability of the married person is based upon an act or omission which occurred while the married person was performing an activity for the benefit of the community, the liability shall first be satisfied from the community property and second from the separate property of the married person. [¶] (2) If the liability of the married person is not based upon an act or omission which occurred while the married person was performing an activity for the benefit of the community, the liability shall first be satisfied from the separate property of the married person and second from the community property. . . ."

[2] However, Clement testified the salary was not a factor in his decision to serve on the board. Clement's director's salary was $10,000 annually, hardly motivation for an individual whose net worth at the time was over $10 million; nor apparently was his separate property stock in USNB a motivating factor. The value of his stock was approximately $20,000. He held only 5 percent of that stock personally and the remaining 95 percent was held in trust.

[3] It appears Clement was well-advised. The complaint in this lawsuit set forth 194 causes of action and sought hundreds of millions of dollars in damages. Clement settled it for $5,000.

[4] This was presumably to establish that the conduct fell within the rule of *In re Marriage of Stitt* (1983) 147 Cal.App.3d 579 [195 Cal.Rptr. 172], discussed *post.*

After the hearing, the court made the following findings in its memorandum of intended decision: "[T]he liabilities incurred by [Clement] in the settlement of the three lawsuits and the attendant attorneys [*sic*] fees arising out of his service as a member of the board of directors of the United States National Bank during and after the marriage of the parties are not community obligations. [Clement's] motion to have these liabilities declared to be community obligations and requesting reimbursement from the community is denied. [¶] The basis for this intended decision is that the settlement obligations and the attorneys [*sic*] fees in connection therewith were incurred by [Clement] as a result of his tortious conduct and pursuant to the holding of *In re Marriage of Stitt* should therefore not be charged against the community."

The proposed order submitted by Claudia's counsel and ultimately signed by the court was in substantial conformity with the memorandum of intended decision except it deleted any reference to the *Stitt* decision.[5] ▌ Clement appeals, contending the trial court erred in failing to apply the "benefit of the community" test of Civil Code section 5122[6] to the allegedly tortious conduct which formed the basis of the lawsuits against him. Had the court properly applied this test, Clement argues, it would have found the amounts paid to settle those lawsuits were community obligations.

Since the passage of the Family Law Act in 1970 there has been a surprising absence of guidelines for classifying debts arising out of allegedly tortious conduct. Although the trial court's role is obvious once a debt has been properly characterized as a community obligation, the appropriate method for reaching that determination has not been made clear.

▌ We begin with the fundamental principle applicable to the division of property in a dissolution proceeding: " 'In dividing the community property equally under the mandate of Civil Code section 4800, subdivision (a), the court must distribute both the assets and the obligations of the community so that the residual assets awarded to each party after the deduction of the obligations are *equal*.' (*In re Marriage of Fonstein* (1976) 17 Cal.3d 738, 748 [131 Cal.Rptr. 873, 552 P.2d 1169].)" (*In re Marriage of Schultz* (1980) 105 Cal.App.3d 846, 853 [164 Cal.Rptr. 653].)[7] "[T]ransactions of the

---

[5] The order signed by the court states, "[T]he liabilities incurred by [Clement] for settlements, attorneys [*sic*] fees and costs regarding lawsuits against [Clement] which arose from his service as a member of the Board of Directors of the United States National Bank of San Diego do not constitute community obligations. The court further determines that [Clement] is not entitled to reimbursement from the community, or otherwise from [Claudia], regarding such liabilities."

[6] All statutory references are to the Civil Code unless otherwise specified.

[7] There are statutory exceptions to the equal division rule of section 4800, subdivision (a) which are inapplicable here. For example, in a bankrupt estate in which the community's

spouses *inter se* are subject to review and the separate debts of one spouse may be excluded from the shared community obligations. [Citation.] 'Between the spouses, certain obligations which are properly characterized as separate may be assigned to the responsible person if unpaid, or reimbursement may be ordered in favor of the community if the debt was paid from community assets.' [Citation.]" (*In re Marriage of Lister* (1984) 152 Cal.App.3d 411, 417 [199 Cal.Rptr. 321].) Although a creditor may be able to reach a community asset to satisfy a debt incurred by one spouse alone, in a dissolution action the court may properly require the debtor spouse to bear the entire burden of the obligation if it finds that debt to be a separate obligation.

 Relying on *In re Marriage of Stitt, supra,* 147 Cal.App.3d 579, the court below found the settlement obligations incurred by Clement to be his separate debt because the underlying lawsuits alleged tortious conduct committed by him. In *Stitt,* wife incurred attorney's fees in defending against civil and criminal charges of embezzlement from her employer. Wife settled the civil action and was convicted in the criminal action. In a subsequent dissolution proceeding, wife argued the attorney's fees should be regarded as a community obligation because they were incurred during marriage. Husband conceded the community was responsible to the attorneys for the obligation, but contended that as part of the dissolution action, the court could properly assign that obligation to wife as her separate debt. Husband relied on section 5122, which states that a married person is generally not liable for damages caused by a tortfeasor spouse. The trial court agreed with husband, finding wife was required to satisfy the attorney's fee obligation from her share of the community assets.

On appeal, the court was similarly persuaded that section 5122 was applicable and operated to shield the community from liability for the tortious acts of wife: "We use the term 'community obligation' for convenience. It has been said that there are no separate debts as distinguished from community debts. [Citations.] However, for practical purposes the spousal obligations are to be viewed first from the creditor's standpoint, which may encompass both community and separate property, then from the standpoint of the spouses who are interested not only in the equal division of the community property and liabilities but also in preventing a 'separate debt' of one spouse from being included in the shared community obligations. [Citation.]

". . . . . . . . . . . . . . . . . .

liabilities exceed its assets, the court is not required to assign the obligations equally to each spouse; instead, it may effect an equitable division, taking into consideration the respective earning capacities of the spouses as well as other factors it deems relevant. (§ 4800, subd. (c)(2).)

"Because husband did not participate in wife's embezzlement and no benefit to the community was shown, . . . [¶] . . . in the settlement of marital rights the court could seek an equitable result because of the separate nature of the obligation. In this instance the court found it appropriate to assign the full financial responsibility for the wife's embezzlement to the wife, preventing her assertion of 'community debt' from diminishing the husband's share of the community property. This was consistent with the general principle found in section 1714 that the actor is solely responsible for wilful and negligent acts unless shared, mitigated or excused because of other principles of law." (147 Cal.App.3d at pp. 587-588.)

In a remarkable leap, the court then states, "Returning to section 5122, we find a legislative direction that between the spouses the mere fact of marriage should not change the usual rules of personal responsibility for the consequences of criminal or tortious activity. Although the section spells out the order in which creditors may satisfy tort claims from the property of the spouses, it does not forbid one spouse from later disclaiming responsibility for the tort liability of the other in a dissolution proceeding. . . ." (147 Cal.App.3d at p. 588.)

We are mystified as to where the *Stitt* court found this so-called legislative direction to apply section 5122 in a dissolution proceeding and effect an "equitable" division of property where *any* tortious conduct is involved, be it negligent or intentional. The proper statutory focus in the assignment of spousal obligations is section 4800. And although the "benefit of the community" language of subdivision (b) of section 5122 is useful in characterizing an obligation as separate or community in nature, the section itself is a creditors' statute, designed for their protection; it is not a legislative return to the pre-1970 "fault" concept of division of marital property.

Confined to its facts, *Stitt* is correct. ■ An innocent spouse is not required to share in losses incurred by the intentionally tortious or criminal conduct of a spouse where there is no benefit to the community. But the holding in *Stitt* is overbroad because it includes negligent as well as intentional torts.[8] Thus, to the extent *Stitt* holds the negligent conduct of a spouse engaged in an activity benefiting the community provides sufficient justification to characterize a debt as a separate obligation, it is incorrect.

A few examples illustrate the point. Assume a spouse who is an attorney commits malpractice and is held liable for a substantial judgment. Since the law practice was an activity intended to produce income for the community,

[8] Although intentional torts and crimes rarely benefit the community, we can envision situations in which the community would be enriched by such conduct. For example, had wife put the embezzled funds into a community account or other community property, it would have been appropriate for the community to bear the corresponding loss.

the malpractice judgment would be a shared community debt, even though it results from one spouse's negligence. But the same result should also follow when the negligence occurs while driving the family car on a personal errand. Neither spouse should bear the entire financial burden of such a loss. Finally even criminal or intentionally tortious conduct which results in obtaining substantial ill-gotten assets for the community creates a shared community debt. A spouse who temporarily doubles the value of the community through a fraudulent scheme should not forfeit all of his or her rights to the honestly obtained assets when restitution is made.

 Turning to the facts before us, it is impossible to know whether the tortious conduct which gave rise to the resulting obligation was negligent or intentional since Clement settled those lawsuits before trial. However, as stated *ante,* the characterization of the conduct alone does not resolve the question. Even if Clement's conduct was intentionally tortious, he presented evidence his activities benefited the community. Clement's exposure to liability arose out of his actions while serving on the board of USNB, which took place for the most part during his marriage to Claudia. The remuneration he received for serving on the board was undisputedly community property.

Claudia presented no evidence that Clement's service on the board was to protect his separate property stock or further any of his separate property businesses. There was therefore no legitimate basis to characterize the settlement obligations as Clement's separate debt.

The order is reversed and the matter remanded to the trial court to determine the reasonableness of the attorney's fees incurred by Clement in defending the lawsuits.

Smallwood, J.,* concurred.

**CROSBY, J.**—I concur in the result.

Respondent's petition for review by the Supreme Court was denied August 17, 1989.

---

* Assigned by the Chairperson of the Judicial Council.