[Civ. No. 23216.   First Dist., Div. Three.   Apr. 24, 1967.]

JUDY COLLINS SOMPS, Plaintiff, Cross-defendant and Appellant, v. GEORGE EDWARD SOMPS, Defendant, Cross-complainant and Respondent.

Walter T. Winter for Plaintiff, Cross-defendant and Appellant.

J. A. London and William G. Filice for Defendant, Cross-complainant and Respondent.

BROWN (H. C.), J.—The plaintiff Judy Somps appeals from certain portions of an interlocutory judgment of divorce which awards the stock in MacKay & Somps, a corporation, and other assets, to defendant George Somps as his separate property.

Judy Somps (hereinafter referred to as wife) and George Somps (hereinafter referred to as husband) were married on April 28, 1954, and lived together until April of 1963, the date of commencement of this divorce proceeding. Wife had three children by a prior marriage who were subsequently adopted by husband. The parties had three children by this marriage. Prior to marriage wife had no financial assets. Husband had a 50 percent partnership interest with one Donald MacKay in an engineering business which had been in existence for a period of one year. Husband also had some cash and stocks.

On November 13, 1964, an interlocutory judgment of divorce was entered granting both parties a divorce on the grounds of extreme cruelty. The decree awarded the business and certain other assets to husband as his separate property. It declared a $15,000 indebtedness to First Valley Bank to be a community indebtedness. An accumulation of cash from husband's earnings from the business was allocated as 60 percent separate property of husband and 40 percent community property.

Other joint tenancy and community assets possessed by husband and wife at the time of divorce consisted of two residences, household furniture, real property, cash in bank, and automobile, all of which were evaluated at approximately $463,000. This property was awarded one-half to husband and one-half to wife. Wife's total award amounted to approximately $250,000.

Husband and wife were awarded the joint custody of the minor children with physical custody to the wife. Husband was ordered to pay $750 per month for the support of the minor children and alimony for 36 months at $750 per month. Husband was further ordered to pay wife's attorney the sum of $7,500.

Husband also appealed from those portions of the judgment that awarded alimony to wife and the award to wife of a one-half interest of the proceeds of the parcel of real property

known as the Pleasanton property. Husband has abandoned his appeal. The wife has, in her opening brief, abandoned those portions of the appeal referring to the Volk property, failure to grant a divorce on the ground of adultery, that she pay her own court costs and that her alimony terminate after 36 months.

Wife claims that the trial court erred in holding (1) that the business (MacKay & Somps) was the separate property of husband; (2) that the Binkley property was purchased with separate funds of husband and therefore the profit realized from the sale was his separate property; (3) that certain income and salaries of husband be allocated 60 percent to husband as his separate property and 40 percent to the community; (4) that the indebtedness to First Valley Bank in the sum of $15,000 was a community obligation; and (5) that wife was not entitled to a longer continuance to prepare for trial.

(1) Did the trial court err in holding that the business of MacKay & Somps was husband's separate property?

Husband and a Donald MacKay as equal partners commenced a civil engineering business in 1953. Each of the parties contributed $5,000, tools, and his personal automobile to the original capital. The firm specialized in single-family residences. When husband and wife married in 1954, husband's equity in the business was approximately $16,000. At the time of divorce the net worth of husband's one-half was $222,433. In 1959 the assets of the partnership were transferred to two corporations formed by husband and MacKay in exchange for stock. MacKay and husband each received 50 percent of the stock in the new corporations. It was conceded that the two corporations were a continuation and reorganization of the original partnership formed in 1953.

Wife contends that the large increment to the business accruing after marriage should be declared community property because husband's education, abilities and labors contributed substantially to its growth and success. Husband had a degree in engineering from Utah State University and a master's degree in business administration from Stanford. She testified that the business was in existence only one year prior to marriage, that they did not go on a honeymoon and rarely took a vacation and that husband worked overtime in the early part of their marriage. Husband admitted that he occasionally worked nights and on week ends.

The general rule is that ''The time, efforts, and skill

of the husband are assets of the community and when they are used for the enrichment of the separate property of the husband, the community must be compensated." (*Strohm* v. *Strohm*, 182 Cal.App.2d 53, 62 [5 Cal.Rptr. 884].)

Wife introduced evidence to show that husband treated the business as community property. This evidence disclosed that husband and his partner MacKay used business assets to purchase several investment properties, particularly those parcels known as (1) the Cook ranch, (2) the Wisner property, consisting of two parcels of land (which had not been sold at time of divorce, one parcel was adjudged to be community property and the other joint tenancy property of husband and wife), and, (3) the Goldhammer property. Title to all these properties, with the exception of one portion of the Wisner property which was in husband's and Donald MacKay's name only, was taken in the names of Mr. and Mrs. MacKay as to an undivided one-half interest and to husband and wife as joint tenants as to an undivided one-half interest. The properties were carried on the books of the business as assets and the balances due on the purchase prices were listed as liabilities. All installments due on the balance were paid by the business. The Cook ranch was sold at a substantial profit. The Goldhammer property was sold at a profit to a joint venture owned by the corporation MacKay & Somps. The proceeds of the sale of these properties were apparently deposited to the account of the business. Wife and husband jointly paid capital gains taxes on these transactions. Wife claims that this commingling of community assets with the property of the business made segrgeation impossible, and was evidence that husband considered the business to be community property.

The reason MacKay and husband had title to the Cook, Wisner and Goldhammer properties, deeded to themselves jointly with their wives and thereafter listed the properties as assets of the business, is not clear. It is clear, however, that the purchase price of the properties and all installments were paid by the business and the risk of loss was borne by the business. No community funds were used to purchase these properties. The trial court was not persuaded that community funds were so commingled with business assets so as to evidence an intent by husband to make the business community property.

Husband produced expert testimony to the effect that the growth of the business was due to the tremendous demand for

334

single-family residences, to the phenomenal population growth in Santa Clara County, to his partner MacKay's ability and to the efforts of the loyal staff of employees. An expert witness (another civil engineer from that locality) testified that MacKay and husband could not have picked a better time to commence the business. Two employees stated the business would have operated just as well without husband so great was the market for single-family homes. Husband and Mac-Kay testified that one-half of the first year of business was spent for promotional activities. Husband testified that 60 percent of the money earned by the firm between 1954 and 1964 could be traced to husband's and MacKay's efforts in soliciting clients during the year prior to the Somps marriage.

The court's opinion that the business was the separate property of husband was fortified by testimony that husband and wife had orally agreed that it should remain his separate property and the court so found. This finding was based on the testimony of husband. It was denied by wife. ■ Husband and wife may alter the character of their property by oral agreement. A transmutation from community to separate property occurs when the spouses agree to change the character of the property. Originally only a written agreement would suffice but more recently oral transmutations have been upheld. (Civ. Code, §§ 158, 159; see *Lawatch* v. *Lawatch*, 161 Cal.App.2d 780, 789 [327 P.2d 603]; *Estate of Raphael*, 91 Cal.App.2d 931 [206 P.2d 391]; *Woods* v. *Security-First Nat. Bank*, 46 Cal.2d 697, 701 [299 P.2d 657]; *Community Property: Commingled Accounts and the Family-Expense Presumption* (1967) 19 Stan.L.Rev. 661, 663.) ■ It is unnecessary to consider the propriety of this finding, however, as there was substantial evidence for the trial court's holding that the increase in the partnership assets or in the value of the stock after the business was incorporated was attributed to a reasonable return upon the separate property of husband invested by him before marriage, and the faithful, loyal and effective services of his partner MacKay and the employees, together with the unprecedented population growth in Santa Clara County, causing an abnormal demand for residential subdivisions and other favorable business factors not related to husband's abilities or labors.

Although the court found that the business was the separate property of husband, there is no doubt that husband's efforts, educational training and ability contributed to some

extent to its success. The community was entitled to compensation for this contribution.

Wife contends that the community should be compensated by adopting the method of apportionment between separate and community property as set forth in *Pereira* v. *Pereira*, 156 Cal. 1 [103 P. 488, 134 Am.St.Rep. 107, 23 L.R.A. N.S. 880]. There the court held that the husband's separate property amounted to his original investment plus a fair return thereon measured by the usual interest on a long investment well secured, which was fixed at 7 percent. The increment due to the personal efforts of husband belonged to the community estate. This rule was followed in *Estate of Neilson*, 57 Cal.2d 733, 740 [22 Cal.Rptr. 1, 371 P.2d 745] and other cases cited therein. The courts, however, recognize that "Departures from the Pereira formula have been made when husband introduced evidence that 'a larger return on his capital had in fact been realized.' (*Gilmore* v. *Gilmore*, 45 Cal.2d 142, 150 [287 P.2d 769] [great increase in automobile business as a whole accompanied by increase in value of husband's dealer franchises; husband did not take active part in conducting routine operations of the business]; *Harrold* v. *Harrold*, 43 Cal.2d 77, 80 [271 P.2d 489] [same]; *Huber* v. *Huber*, 27 Cal.2d 784, 792 [167 P.2d 708] [custom broker business required considerable capital since money was advanced for customers]; *Tassi* v. *Tassi*, 160 Cal.App.2d 680, 691 [325 P.2d 872] [high profits realized in meat business generally]; *Logan* v. *Forster*, 114 Cal.App.2d 587, 601 [250 P.2d 730] [increase in population and economic development of community; wife played inactive role in conducting her business].)" (*Estate of Neilson, supra,* p. 740.)

The court in *Owens* v. *Owens*, 219 Cal.App.2d 856, 858 [33 Cal.Rptr. 599] said: "'It has frequently been held that a proper method of making such allocation [between separate and community property] is to deduct from the total earnings of the business the value of the husband's services to it. The remainder, if any, represents the earnings attributable to the separate property invested in the business.' [Citation.] . . . [Citations.] . . . The court found that the salaries paid by the corporation to defendant for his services during the marriage were sufficient to fully compensate both defendant and the community. . . .'" (See also *Gilmore* v. *Gilmore*, 45 Cal.2d 142, 149-150 [287 P.2d 769].)

"It is primarily a question of fact 'for the court to determine what portion of the profits thereafter arises from the use

of this (separate) capital and what part arises from the activity and personal ability of the husband.' '' (*Logan* v. *Forster*, 114 Cal.App.2d 587, 600 [250 P.2d 730]; also see *Todd* v. *McColgan*, 89 Cal.App.2d 509 [201 P.2d 414]; *Witaschek* v. *Witaschek*, 56 Cal.App.2d 277 [132 P.2d 600].)

■ There was substantial evidence to justify the court's finding that the husband and the community were fairly and adequately compensated for husband's services to the business. Husband withdrew extensive sums as salary from the business. During the marriage husband and wife maintained a high, if not luxuriant, standard of living. The parties owned community and joint tenancy assets in excess of $450,000 at the time of divorce, and the source of all money expended for living expenses and used to acquire these assets was the earnings husband received from the business. (The trial court awarded this property equally to husband and wife.)

■ Since the evidence adequately supports the findings that the business was the separate property of husband and the community had been compensated for his contribution, it cannot be disturbed on appeal. (See *Baker* v. *Baker*, 98 Cal. App.2d 424, 426 [220 P.2d 576]; *Mears* v. *Mears*, 180 Cal. App.2d 484, 498 [4 Cal.Rptr. 618], overruled on other grounds; *See* v. *See*, 64 Cal.2d 778, 785-786 [51 Cal.Rptr. 888, 415 P.2d 776].)

(2) Did the trial court err in holding the Binkley property was purchased with husband's separate assets and that the profits realized from the sale were his separate estate?

Husband, with MacKay and a Mr. Rodrigues, purchased and sold a parcel of property known as the Binkley property. When acquired, title to husband's interest was conveyed in husband's name alone. Husband in purchasing the property used $5,000 received from the sale of stock which was his separate property and $8,000 which he borrowed from a bank on his note. Wife was not a co-signer on the note. The banker who made the loan to husband testified that he did so on the basis of husband's credit and the credit of the business of MacKay & Somps. Husband testified that the loan was personal and was granted on the basis that the Binkley venture was sound. Wife contends that the bank in extending this credit relied on the financial statement given by husband to the bank which listed husband's and wife's community and joint tenancy properties as assets in addition to husband's separate property.

■ "There is a rebuttable presumption that property

acquired on credit during marriage is community property. (Civ. Code, § 164; *Hogevoll* v. *Hogevoll*, 59 Cal.App.2d 188, 193-194 [138 P.2d 693].) ██ But 'funds procured by the hypothecation of separate property of a spouse are separate property of that spouse.' (*Estate of Abdale*, 28 Cal.2d 587, 592 [170 P.2d 918].) The proceeds of a loan made on the credit of separate property are governed by the same rule. (*Estate of Ellis*, 203 Cal. 414, 416-417 [264 P. 743].) ██ In accordance with this general principle, the character of the property acquired by a sale upon credit is determined according to the intent of the seller to rely upon the separate property of the purchaser or upon a community asset. (*Estate of Ellis, supra*, 203 Cal. 414-416; *Hogevoll* v. *Hogevoll, supra*, 59 Cal.App.2d 188, 193-194; and see *Schuyler* v. *Broughton*, 70 Cal. 282, 285 [11 P. 719]; *Vandervort* v. *Godfrey*, 58 Cal. App. 578 [208 P. 1017].)'' (*Gudelj* v. *Gudelj*, 41 Cal.2d 202, 210 [259 P.2d 656].)

██ ''The burden rests on the party asserting that property acquired after marriage is separate to establish that fact. (*Wilson* v. *Wilson, supra*, 126 [76 Cal.App.2d 119 (172 P.2d 568)].) There are expressions in the decisions to the effect that the separate character of property acquired after marriage is to be established by 'clear and convincing evidence,' 'clear and decisive proof,' 'clear and satisfactory proof.' [Citations.] ██ These expressions state a rule of evidence directed to the trial court; and if that court finds that the evidence meets the rule, a reviewing court must accept that determination as conclusive if there is substantial evidence to support it.'' (*Thomasset* v. *Thomasset*, 122 Cal. App.2d 116, 123 [264 P.2d 626], overruled on other grounds; also see *See* v. *See, supra*.)

Here the presumption that property purchased after marriage is community property was rebutted. The trial court was justified in accepting the testimony of the banker and in finding that the property was purchased with husband's separate estate.

When husband sold the Binkley property the buyers required that wife join in the execution of the deed probably to avoid a possible claim of a community interest by wife. Wife did sign the deed but claims her signature was obtained by husband's fraud. Husband testified he told wife she was signing a deed and explained the transaction to her after she had signed.

Wife argues that all transactions between persons in confidential relationship, and particularly between husband and wife, by which one obtains an advantage from the other are presumed to be entered into without consideration and without undue influence. (*Barney* v. *Fye,* 156 Cal.App.2d 103 [319 P.2d 29].) She further contends that husband breached a fiduciary relationship between husband and wife in that he should have purchased the property with community funds which were available. The fact that husband purchased the Binkley property with his separate funds, as the trial court found, is not evidence of taking any undue advantage nor is it a breach of a fiduciary relationship which would invoke a presumption of fraud or undue influence. There is no reason why husband should be compelled to keep his separate funds idle. Husband apparently had made many investments benefitting the community during the marriage which resulted in the substantial estate owned by the parties at the time of divorce.

Wife further introduced evidence that husband used $6,450 of salary checks to improve the Binkley property and that by reason thereof she should have an interest in the entire Binkley profits. A husband may improve his separate property and if he uses community funds the wife is entitled to compensation to the extent that her share of the community funds increased its value. (*Estate of Chandler,* 112 Cal.App. 601 [297 P. 636] ; deFuniak, *Improving Separate Property* (1957-1958) 9 Hastings L.J. 37.) Here husband used the community funds for taxes and incidental expenses. Where funds have been used for taxes and the like, the wife is limited in recovery to the actual amount used. (*Estate of Turner,* 35 Cal.App.2d 576 [96 P.2d 363].) Husband testified that the use of community funds was a loan which he repaid to the community. The trial court could and did accept husband's testimony.

There was sufficient evidence to support the trial court's findings that the purchase of the property was consummated with husband's separate funds, which he received from the sale of stock he owned prior to marriage, with money borrowed from the bank loan on the strength of the Binkley transaction itself, the reliability and financial stability of the firm of MacKay & Somps, husband's separate property and that there was no fraud or duress practiced on wife.

(3) Did the trial court err in determining that certain income and salary from the business were 60 percent hus-

band's separate property and 40 percent community property?

At the time of trial husband had (1) salary due from MacKay & Somps in the sum of $13,112, (2) $7,128 he received as salary which was on deposit in the First Valley Bank, and (3) in his possession salary accumulations (uncashed checks and cash) in the sum of $34,285. This latter amount was reduced by his payment of $29,325 in community income taxes, leaving husband with the balance of $4,960 at the time of trial. The trial court allocated 60 percent of these sums to husband as his separate property and 40 percent to the community. There is no specific finding by the court as to the means of arriving at this allocation. A witness testified that a reasonable salary for his services would be between $30,000 and $50,000 per year. There is also evidence that husband gave wife $3,000 per month for household expenses. ($36,000 is 40 percent of the $90,000 salary.) The record is silent as to whether the court considered salaries for the years preceding 1960.

MacKay & Somps permitted withdrawals from the business for three years preceding the divorce at $90,000 per year each. They made no allocation as to whether this was salary or dividends. They determined the amount which would reasonably compensate them for their services. During the approximate ten years of marriage salary wthdrawals were treated as the property of the community. In the absence of contrary evidence salary withdrawals to the time of divorce should have been treated in the same manner and declared to be community property. Further, it was inconsistent for the trial court to hold that the community was adequately compensated for husband's contribution to the success of the business by reason of the community receiving his salary withdrawals and other emoluments and then to declare that the balance of salary on hand at the time of divorce should be 60 percent husband's separate property and 40 percent community property.

(4) Did the trial court err in finding that the $15,000 borrowed from First Valley Bank was a community property obligation and the balance remaining on deposit was husband's?

Husband borrowed $15,000 from First Valley Bank on April 22, 1964, one month before trial. Wife introduced evidence which disclosed that husband made disbursements in the total sum of $6,207 for the benefit of the community.

These payments were admittedly made to extinguish community obligations. Husband then repaid an outstanding obligation to MacKay & Somps in the sum of $5,086 and paid himself $1,877, or a total of $6,963 which benefitted only husband. The balance left in the account was $1,887.

Husband was the manager of the community, and the loan was justified but it was incumbent upon husband to establish that the expenditures benefitted the community. He has the duty of accounting for disbursements and keeping records if he intends charging the community with the obligation. The only accounting was produced by wife which established that husband received $6,963 for his personal use and benefit.

The trial court erred in finding the $1,887 remaining in the account to be separate property. The character of property is determined at the time of acquisition. (*See* v. *See, supra,* 778.) If the loan was treated as a community obligation, the proceeds must be used for the benefit of the community and any unused portion of the funds belongs to the community. Husband should be charged with personally receiving $6,963. The expenditure in the sum of $6,207 benefitted the commuity and is properly a community obligation. The balance in the the account in the sum of $1,887 is also community property.

(5) Did the trial court err in denying a continuance to wife's counsel?

■ Wife's counsel requested a continuance of the trial date for further trial preparation. The court granted a one week's continuance which wife claims was insufficient. Counsel who moved for the continuance was substituted into the case on December 30, 1963. The granting or the refusal to grant a continuance is a matter of discretion with the trial court and the order denying a continuance generally will not be disturbed on appeal. (2 Witkin, Cal. Procedure (1954) § 21, p. 1748.) The divorce proceeding was instituted in April of 1963. The decree was not entered until November of 1964. It appears that there was ample time for trial preparation and there was no showing of an abuse of discretion by the trial court in limiting the continuance to one week.

The judgment of the trial court allocating 60 percent to husband and 40 percent to the community of the salary in possession of husband at the time of the divorce totalling $25,200 is reversed with directions that this sum should be declared community property to be equally divided between husband and wife.

The portion of the judgment which provides that husband

and wife should be charged with the payment of the obligation in the sum of $15,000 to the First Valley Bank is affirmed. That part of the judgment pertaining to the balance remaining in the account in the sum of $1,887 is reversed, with direction that said balance of $1,887 be declared community property to be divided equally between husband and wife, and, further, that husband, having received $6,963 of said loan for his personal benefit, shall repay to wife one-half of that sum or the sum of $3,481.50.

The remaining portions of the judgment appealed from are affirmed.

Each party to bear his own costs.

Draper, P. J., and Salsman, J., concurred.

A petition for a rehearing was denied May 24, 1967, and appellant's petition for a hearing by the Supreme Court was denied June 21, 1967.