[Civ. No. 25880.  First Dist., Div. Four.  Sept. 3, 1969.]

ROSALIND E. FORD, Plaintiff and Respondent, v. KENNETH A. FORD, Defendant and Appellant.

Acret & Perrochet, Acret, Perrochet & Robinow and James Acret for Defendant and Appellant.

Field, De Goff & Rieman, Field, De Goff, Huppert & Maguire, John F. Dethlefsen and Sidney F. De Goff for Plaintiff and Respondent.

CHRISTIAN, J. — Kenneth A. Ford appeals from the property provisions of an interlocutory decree of divorce awarded to his wife, Rosalind. He contends, on several grounds, that the court erred in treating as community property a farm located in the State of Illinois, and certain funds accumulated from income produced by the farm.

Before the marriage, Kenneth owned (as tenant in common with his brother John) two farms in Illinois which we shall identify as the Ohio Township farm and the Walnut Township farm. Three days prior to the marriage the parties acting at Kenneth's instance, executed an agreement providing that all of the separate property of Kenneth was to remain his personal estate; Rosalind waived all right and interest in any of Kenneth's property which she might acquire as his wife. About four years later, Kenneth traded his one-half interest in the Walnut Township farm for John's one-half interest in the Ohio Township farm. At the same time John sold the Walnut Township farm to Kenneth for $105,000. Kenneth obtained a $113,685 loan from the Federal Land Bank to cover the purchase price and incidentals, including a required $5,685 purchase of stock in the Federal Land Bank. The note to the Federal Land Bank was signed by both Kenneth and Rosalind; it was secured by a mortgage upon both farms, also signed by both parties.

Payments on the note between the date of Kenneth's acquisition of the Walnut Township farm and the parties' divorce were made from farm income. The farms were operated by tenants under the supervision of a professional farm manager; there was no substantial evidence that Kenneth contributed his time, energy or talent to the operation of the farms.

By terms of the judgment, Kenneth was ordered to pay to Rosalind the sum of $20,000 as her share of the community property (less the actual cash value of Rosalind's interest in her retirement fund). This provision depends upon the

court's finding that the Walnut farm, as well as all bank balances and other assets traced to farm income, was to be treated as community property.

██ Appellant first contends that treatment of the Walnut farm as community property was incorrect because the California community property system may not be applied to Illinois real property. In relevant part, section 164 of the Civil Code provides as follows: "All other real property situated in this state and all other personal property wherever situated acquired during the marriage by a married person while domiciled in this state is community property; . . ." Appellant contends that the quoted definition of community property is inapplicable to out-of-state real property. But California courts have long applied community property rules to out-of-state realty acquired with community funds (*Rozan* v. *Rozan* (1957) 49 Cal.2d 322 [317 P.2d 11]; *Riggs* v. *Riggs* (1963) 223 Cal.App.2d 594 [35 Cal.Rptr. 793]; *Tischhauser* v. *Tischhauser* (1956) 142 Cal.App.2d 252 [298 P.2d 551].) Nothing in the 1961 amendment of section 164 indicates an intention to change the doctrines which had evolved in the cases.

██ Appellant also contends that the acquisition of the Walnut Township farm could not have benefited the community estate because the antenuptial agreement "waived marital property rights of respondent." But the agreement purported only to affect property owned by appellant "at the time of the marriage or acquired *by him* at any time thereafter, . . ." (Italics added.) The natural inference arising from the quoted language, that the agreement did not anticipate a surrender of any community or other interest acquired *by the wife* under California law, was supported by the testimony of the lawyer who prepared the document: "I think we intended his separate property." Appellant's testimony to the contrary merely created a conflict in the extrinsic evidence of intent. We uphold the trial court's resolution of that conflict. (*Parsons* v. *Bristol Dev. Co.* (1965) 62 Cal.2d 861 [44 Cal.Rptr. 767, 402 P.2d 839].)

The trial judge found that the equity in the Walnut farm (worth approximately $33,500 including $5,700 in Federal Land Bank stock) was community property. The judge also found that the community interest in other assets derived from farm income totaled $3,350. Thus a determination of the character of the farm itself controls the disposition of the other assets derived from farm income.

The trial court's finding as to the community or separate character of property is binding upon us if supported by substantial evidence; although clear and convincing evidence must be presented in order to rebut the presumption, created by section 164, that post-nuptial acquisitions are community property, that standard is to be applied by the trial court; it does not affect our review of the trial court's determination (*Somps* v. *Somps* (1967) 250 Cal.App.2d 328, 336 [58 Cal. Rptr. 304] ; *Thomasset* v. *Thomasset* (1953) 122 Cal.App.2d 116, 123 [264 P.2d 626], overruled on other grounds, *See* v. *See*. (1966) 64 Cal.2d 778, 786 [51 Cal.Rptr. 888, 415 P.2d 776]). Respondent cites four items of evidence to support these findings: the wife's signature on the mortgage and promissory note; the lender's supposed reliance upon respondent's income as security for the loan; references to the Walnut property as ''our farm'' by appellant; and pictures taken of respondent and appellant at the farm.

Respondent does not contend that the parties entered into any agreement to change the character of the farm property after its purchase. But if money for the purchase of property is obtained on the credit of the community estate, the result is a community purchase. The *intent of the lender* with respect to the credit upon which the loan was made is determinative. (*Gudelj* v. *Gudelj* (1953) 41 Cal.2d 202, 210-211 [259 P.2d 656]; *Somps* v. *Somps, supra,* 250 Cal.App.2d 328, 336-337). Therefore the evidence pointed to by respondent must be evaluated for any bearing it may have on the Federal Land Bank's intentions in extending credit.

The photographs of the parties at the Walnut and Ohio farms throw no light upon the intention of the lender of the purchase price. The references to ''our farm'' by respondent likewise do not refer to the credit decision of the Federal Land Bank. Respondent argues that '' [i]t is quite probable that the bank did know of respondent's occupation and income and this was one of the strong considerations in making the loan''; but the only evidence cited to support this contention is the claimed fact that appellant's attorney prepared income tax returns which showed the occupation and income of respondent. This evidence has no tendency to show knowledge and intent on the part of the loan officer at the Federal Land Bank.

The single item of evidence which gives any support to the finding is respondent's signature upon the mortgage and promissory note. No one from the Federal Land Bank testified

as to the intention of that institution in making the loan. There was a suggestion that respondent's signature on the note and mortgage was obtained in order to satisfy the lender that the encumbrance would prevail over any right of common law dower which respondent might have under Illinois law. But the objective of subjecting any interest of the wife to the mortgage could as well have been met by an instrument waiving dower, or by respondent's signing the mortgage alone. (*Matthews* v. *Hinton* (1965) 234 Cal.App.2d 736, 741-742 [44 Cal.Rptr. 692]; also see 36 Am.Jur., Mortgages, §§ 58, 59; 1 Glenn, Mortgages, p. 23.) When she signed the note she assumed personal liability for payment of the debt.

Although proceeds of a loan obtained upon the hypothecation of separate property are themselves separate property (*Gudelj* v. *Gudelj, supra,* 41 Cal.2d 202, 210-211; *Estate of Abdale* (1946) 28 Cal.2d 587 [170 P.2d 918]; *Somps* v. *Somps, supra,* 250 Cal.App.2d 328, 336-337; *Hicks* v. *Hicks* (1962) 211 Cal.App.2d 144, 153 [27 Cal.Rptr. 307]), the proceeds of a loan made on the personal credit of either spouse are regarded as community property (4 Witkin, Summary of Cal. Law (7th ed. 1960) Community Property, § 20, p. 2727). The property hypothecated in the present transaction was the Ohio Township farm (separate property) and the Walnut Township farm (character determined by the character of the loan proceeds). The question is whether the signature of the wife on the note and mortgage is sufficient to support the implied finding that the lender relied upon the credit of the community. Many cases indicate that such a signature does not *compel* a finding in favor of the community. (See, e.g., *Dyment* v. *Nelson* (1913) 166 Cal. 38, 40 [134 P. 988]; *Heney* v. *Pesoli* (1895) 109 Cal. 53, 61 [41 P. 819]; *Hicks* v. *Hicks, supra,* 211 Cal.App.2d 144, 153-154; *Kenney* v. *Kenney* (1954) 128 Cal.App.2d 128, 138 [274 P.2d 951], overruled on other grounds, *See* v. *See, supra,* 64 Cal.2d 778, 785; *Hogevoll* v. *Hogevoll* (1943) 59 Cal.App.2d 188, 195 [138 P.2d 693]; *Stewart* v. *Stewart* (1931) 113 Cal.App. 334 [298 P. 83].) These cases are consistent with the idea that the community or separate character of property purchased on credit is determined, as declared by the Supreme Court in *Gudelj* v. *Gudelj, supra,* 41 Cal.2d 202, 210, "according to the intent of the seller to rely upon the separate property of the purchaser or upon a community asset."

The state of mind of the seller (or, as in this case, the lender) is of course a question of fact. The circumstance that in this case the lender required respondent's signature on the note and mortgage raises an inference that if she had not been willing to execute the documents credit would not have been extended. That inference is not unreasonable even though the substantial value of the two farms made subject to the mortgage, as compared with the modest community estate and earning capacity, might indicate that the security given on appellant's separate property was the more weighty factor in inducing the Federal Land Bank to grant a loan. Nevertheless, it might seem that these considerations all properly fell within the province of the trial court in determining the question of fact which we have identified.

■  Appellant, however, points to two early decisions of the Supreme Court (*Flournoy* v. *Flournoy* (1890) 86 Cal. 286 [24 P. 1012, 21 Am.St.Rep. 39], and *Martin* v. *Martin* (1877) 52 Cal. 235) which hold that the signature of one spouse on a note and purchase money mortgage encumbering separate property of the other spouse "cannot affect the rights of the parties" (52 Cal. at p. 237) as to the community or separate character of the proceeds. (Cf. *Estate of Neilson* (1962) 57 Cal.2d 733, 746 [22 Cal.Rptr. 1, 371 P.2d 745].) It is difficult to reconcile the *Flournoy* and *Martin* decisions with the *Gudelj* idea that the character of loan proceeds may be determined according to the intent of the party extending credit. We note also that the *Flournoy* and *Martin* decisions do not mention the generally applicable presumption, created by the statutory definition of community property, that property acquired during the marriage is community (4 Witkin, Summary of Cal. Law (1960) *supra,* § 25, p. 2731). But it is not our function to overrule decisions of the Supreme Court even if they are old. It is our duty to follow and apply the law as expounded in the decisions of higher courts until change has been lawfully accomplished by legislation or by later decision. We therefore hold, under compulsion of the *Flournoy* and *Martin* decisions, that respondent's execution of the note and mortgage could not affect the rights of the parties. According to the evidence, the only other inducement to the Federal Land Bank's extension of credit was the security given upon appellant's separate property. Accordingly, the Walnut Township farm and the rents and profits it produced appear to have been separate property. But a further showing may be attempted by respondent on retrial.

The award of property which the trial court attempted to make may well have influenced the court's appraisal of the total relative circumstances of the parties which determined its denial of alimony to respondent. Justice therefore requires that the question of alimony be set at large.

The judgment is reversed with directions to the trial court to enter a new interlocutory decree of divorce in favor of respondent after taking further proceedings, consistent with the views expressed herein, concerning property and support. Neither party will recover costs on appeal.

Devine, P. J., and Rattigan, J., concurred.

A petition for a rehearing was denied October 3, 1969, and respondent's petition for a hearing by the Supreme Court was denied October 29, 1969.