[No. A027266. First Dist., Div. One. July 11, 1986.]

In re the Marriage of DONALIE T. and DUSTIN BELTRAN.
DONALIE T. BELTRAN, Respondent, v.
DUSTIN BELTRAN, Appellant.

## COUNSEL

Alvin H. Goldstein, Jr., Goldstein & Phillips, Norman La Force and Boornazian, Jensen & Garth for Appellant.

Terence F. Colyer, Mary Halbert-Brown and Camera & Colyer for Respondent.

## OPINION

**NEWSOM, J.**—The present appeal presents the question of whether a husband must reimburse the community for the amount of a military pension

forfeited as part of a sentence in a military court-martial. The factual background may be summarized as follows.

Husband and wife were married October 14, 1976. They originally separated March 30, 1981, and wife filed a petition for dissolution on April 3, 1981. After a brief reconciliation from June 30, 1981, to December 16, 1982, action on the petition commenced in 1983.

While the marriage produced no children, wife's daughter from a previous marriage lived with the couple. Husband was a colonel in the United States Army when the parties finally separated. During his tenure in the military, he earned substantial benefits, including a pension and accrued leave. The trial court found that 19.47 percent of his military pension and 31 days of his accrued leave were community property and valued such assets at $117,000 and $5,115 respectively.

While the divorce action was pending, husband was convicted of committing lewd and lascivious acts upon a child under 14 in violation of Penal Code section 288, subdivision (a). On July 13, 1983, a military tribunal convicted husband of the same crime, and, as a result, he was dismissed from the Army and stripped of all military benefits, including his pension and accrued leave.

As part of the dissolution judgment, the trial court charged husband with receipt of the forfeited military pension and accrued leave and ordered accordingly that distribution of the community property be equalized by husband's payment of one-half of such military benefits, in the amount of $59,230.50 to wife. This appeal followed.

■ In a somewhat analogous situation, it has long been established that the community is entitled to reimbursement when community funds are used to pay one spouse's separate debt. (E.g., *In re Marriage of Epstein* (1979) 24 Cal.3d 76, 89 [154 Cal.Rptr. 413, 592 P.2d 1165] [husband used community savings to pay taxes on his postseparation separate income]; *In re Marriage of Lister* (1984) 152 Cal.App.3d 411, 417-418 [199 Cal.Rptr. 321] [husband transferred community-owned house to satisfy his separate debts]; *In re Marriage of Walter* (1976) 57 Cal.App.3d 802, 806-807 [129 Cal.Rptr. 351] [husband used community funds to pay taxes and make mortgage payments on his separate property]; *Somps* v. *Somps* (1967) 250 Cal.App.2d 328, 338 [58 Cal.Rptr. 304] [husband used community funds to improve his separate property].)

Other analogies are close at hand. In the recent case of *In re Marriage of Stitt* (1983) 147 Cal.App.3d 579 [195 Cal.Rptr. 172], the wife incurred

an obligation of $10,989.20 in attorney fees to defend against charges of embezzlement. She personally signed a note for the debt and executed a second trust deed against the family residence. The trial court found the attorney fee obligation to be the wife's separate obligation, chargeable against her share of the community assets. On appeal, the reviewing court affirmed, holding that the wife was fully responsible for all financial consequences of her embezzlement, reasoning that, while the attorney fees were a community obligation in the sense that the attorneys were entitled to satisfy their claims from the community, as between the spouses such fees were the wife's separate obligation. "No principle of law required the innocent spouse to share the loss created by the other party. Husband had not waived his right to receive his share of the community property free from any loss attributable to wife's separate conduct. Therefore it was proper for the court to make orders which carried out the law's intention that only responsible participants in crime or tort bear the loss." (*Stitt, supra,* 147 Cal.App.3d at p. 588.)

Husband seeks to distinguish *Stitt* on the ground that the loss of his pension benefits resulted from imposed forfeiture rather than voluntary payment of a debt. But we find the distinction to be without legal significance. As we read *Stitt,* it was the wife's separate *conduct* which led the court to hold her personally responsible for the loss. The *Stitt* reasoning seems equally applicable whether the loss was incurred by contractual obligation, tort liability or criminal penalty.[1]

Here, as in *Stitt,* husband's criminal conduct diminished the wife's share of the community property to which the wife was otherwise entitled upon dissolution. (*In re Marriage of Brown* (1976) 15 Cal.3d 838, 845-846 [126 Cal.Rptr. 633, 544 P.2d 561, 94 A.L.R.3d 164].) In our view, wife should not be made in effect to share in a penalty imposed upon husband for his criminal conduct. We accordingly conclude as a matter of equity that criminal conduct on the part of husband which directly caused forfeiture of pension benefits justified the trial court's conclusion that wife was entitled to reimbursement for her share of such lost community property.[2]

---

[1]The *Stitt* court noted that not every financial loss need be accounted for upon dissolution of marriage. "We are reminded that there is a principle that one takes a spouse 'for better or worse.' This may be so. Because of the continuing nature of the marital relationship, principles of waiver, condonation and laches would in most cases prevent any belated attempt at the time of dissolution proceedings to seek an accounting of all community property losses attributable to the independent delicts of the spouses. Here, however, the court had conclusive evidence of recently committed criminal activity which culminated in financial consequences at the time the marriage was coming to an end." (*Stitt, supra,* 147 Cal.App.3d at p. 588.)

[2]In light of our conclusion we need not reach the question of whether the trial court's ruling can be upheld as an award or offset for sums "deliberately misappropriated" within the meaning of Civil Code section 4800, subdivision (b).

Husband has raised two additional issues by way of supplemental brief. First, he complains that the trial court had no authority to award wife a portion of his military pension because the marriage lasted less than 10 years. Relying on the Federal Uniformed Services Former Spouses Protection Act (FUSFSPA), husband contends that because he was married to wife for only four years and six months, his military benefits may not be treated as community property. We disagree.

■ Under California's community property law, military pension benefits have long been considered community property subject to division upon dissolution of marriage. (*Henn* v. *Henn* (1980) 26 Cal.3d 323 [161 Cal.Rptr. 502, 605 P.2d 10]; *In re Marriage of Fithian* (1974) 10 Cal.3d 592 [111 Cal.Rptr. 369, 517 P.2d 449]; *Bensing* v. *Bensing* (1972) 25 Cal.App.3d 889 [102 Cal.Rptr. 255].) In *McCarty* v. *McCarty* (1981) 453 U.S. 210 [69 L.Ed.2d 589, 101 S.Ct. 2728], however, the Supreme Court held that military retirement pay is the personal entitlement of the retiree and is not subject to division with a former spouse: neither direct payments nor offsetting awards in a division of community property were authorized by Congress.

Congress acted quickly to nullify the effects of the *McCarty* decision. FUSFSPA (10 U.S.C.A. § 1408) was enacted to allow allocation of military retirement pay between the military member and his or her spouse. Both direct payments to the spouse and offsetting awards of property are now authorized. (10 U.S.C.A. § 1408 (c)(1), (d)(1), (d)(5).) But such authorization is made subject to certain limitations. Husband relies on subsection (d)(2), which appears to require that the marriage must have lasted at least 10 years.[3] (See generally *In re Marriage of Kuzmiak* (1986) 176 Cal.App.3d 1152, 1156-1157 [222 Cal.Rptr. 644]; *Matter of Marriage of Smith* (Wash. 1983) 669 P.2d 448 [25-year marriage meets the 10-year requirement]; *Anderson* v. *Anderson* (Ohio App. 1984) 468 N.E.2d 784 [25-year first marriage added to 7-year second marriage satisfies the 10-year requirement].)

But subsection (d)(2), however, must be read in conjunction with subsection (d)(1). "After effective service on the Secretary concerned of a court order with respect to the payment of a portion of the retired or retainer pay of a member to the spouse or a former spouse of the member, the Secretary

---

[3]"If the spouse or former spouse to whom payments are to be made under this section was not married to the member for a period of 10 years or more during which the member performed at least 10 years of service creditable in determining the member's eligibility for retired or retainer pay, payments may not be made under this section to the extent that they include an amount resulting from the treatment by the court under subsection (c) of disposable retired or retainer pay of the member as property of the member or property of the member and his spouse." (10 U.S.C.A. § 1408(d)(2).)

shall, subject to the limitations of this section, make payments to the spouse or former spouse in the amount of the disposable retired or retainer pay of the member specifically provided for in the court order. In the case of a member entitled to receive retired or retainer pay on the date of the effective service of the court order, such payments shall begin not later than 90 days after the date of effective service. In the case of a member not entitled to receive retired or retainer pay on the date of the effective service of the court order, such payments shall begin not later than 90 days after the date on which the member first becomes entitled to receive retired or retainer pay." So read, subsection (d)(2) is seen to be a limitation only upon *direct* payments made to the former spouse pursuant to a court order served upon the secretary.

Moreover, the legislative history reveals the narrow scope of the subsection. The 10-year requirement was not included in the Senate's version of the bill, despite urgings from the Department of Defense that a minimum of 15 years should be required to assure that a spouse had made a major contribution toward the member's career. (Sen.Rep. No. 97-502, pp. 9-10, 44-45, 47, 52, 54-55, reprinted in 1982 U.S. Code Cong. & Admin. News, pp. 1604-1605, 1627-1628, 1630, 1635, 1637-1638.) The House amendment permitted retirement pay to be considered property only if the marriage lasted at least 10 years. (H.R. Conf. Rep. No. 97-749, p. 165, reprinted in 1982 U.S. Code Cong. & Admin. News, p. 1571.) In conference, the 10-year duration restriction was eliminated, but subsection (d)(2) was added. The conference report explains: "*direct* payments by the service finance centers to a former spouse from the member's retired pay . . . would be limited to situations in which the former spouse was married to the member for at least 10 years . . . ." (House Conf. Report No. 97-749, p. 167, reprinted in 1982 U.S. Code Cong. & Admin. News, p. 1572, italics added.)

In the present case, of course, the benefits are not to be paid directly to wife from the government. Rather, husband has been ordered to make an offsetting payment. The situation is exactly that presented in *Wood and Wood* (1984) 66 Ore.App. 941 [676 P.2d 338]. There, after a 13-year marriage, of which the husband served 8 years in the Navy, the wife was awarded $15,000 as an offset to the husband's military pension. The husband argued, as does husband here, that subsection (d)(2) limited the court's ability to treat his military pension as marital property unless the parties were married for 10 years during the member's military career.

The court rejected the husband's arguments: "We find husband's assertion totally lacking in merit. The provision on which he relies operates only in the event a dissolution decree provides for direct payments from the pension

account to a former spouse. If direct payments from the pension account are not required by the decree, then subsection (d)(2) has no application. That this is so can be seen from a plain, careful reading of the statutory language. [¶] Accordingly, subsection (d)(1) applies only when a trial judge has awarded a former spouse a share of a pension account and provided therefor in a 'court order,' and the order has been served on the secretary. It is true that the provision on which husband relies further limits the secretary's responsibility to make payments under subsection (d)(1) to those situations in which the dissolved marriage coincided with at least ten years of military service. But it is also true that all of subsection (d) applies only in the event that the secretary is effectively served with a 'court order,' as that term is specifically defined by the act. Therefore, the durational requirements of subsection (d)(2) are irrelevant when the decree of dissolution does not award a former spouse a share of the pension and no 'court order' has been drafted or served on the secretary." (*Wood and Wood, supra,* 676 P.2d at pp. 340-341.)

Our reading of the statutory language in light of its legislative history leads us to agree with the *Wood* rationale. We hence conclude that the 10-year requirement acts only as a limitation upon *direct* payments from the government to the former spouse pursuant to a court order served upon the secretary. When direct payments are not required, then subsection (d)(2) has no application.

Husband's second argument is that the trial court erred in awarding wife attorney's fees of $6,000. We decline to address this issue because of husband's unexplained failure to raise it in his opening or reply briefs. (*Durham* v. *City of Los Angeles* (1979) 91 Cal.App.3d 567, 571, fn. 2 [154 Cal.Rptr. 243]; *Sinclair* v. *Aquarius Electronics, Inc.* (1974) 42 Cal.App.3d 216, 229 [116 Cal.Rptr. 654]; *Diamond Springs Lime Co.* v. *American River Constructors* (1971) 16 Cal.App.3d 581, 609 [94 Cal.Rptr. 200].)

Judgment is affirmed.

Racanelli, P. J., and Holmdahl, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 16, 1986. Mosk, J., was of the opinion that the petition should be granted.