Filed 7/13/23  Marriage of Withers CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re Marriage of BRIAN and RACHELLE WITHERS. <br><br> BRIAN WITHERS, <br><br>    Respondent, <br><br>      v. <br><br> RACHELLE WITHERS, <br><br>    Appellant. | G061215 <br><br> (Super. Ct. No. 19D008574) <br><br> O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Renee Wilson, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

Quinn & Dworakowski, David Dworakowski and Stephane Quinn for Appellant.

Grace Ogburn for Respondent.

\*          \*          \*

Rachelle Withers and Brian Withers were married for nearly 15 years prior to their separation.[1] Rachelle owns separate property in San Clemente (the San Clemente property) that she financed with two mortgages. During the marriage, the couple took out a $250,000 home equity line of credit (HELOC), which was secured by the San Clemente property. They used funds from the HELOC to pay off a portion of the mortgages on the San Clemente property and other expenses. At their dissolution, the HELOC's outstanding balance was $207,926. Of this amount, the trial court found $61,000 was Rachelle's separate debt because it was used to pay the San Clemente property's mortgages, which did not benefit the community. The court ruled the community was responsible for the remaining $146,926 of HELOC debt. However, the court explained it was unclear whether the lender would ever collect the HELOC debt due to a prior bankruptcy case filed by Rachelle. Thus, it reserved jurisdiction over equalization of the HELOC debt until the lender took further action to collect it.

Rachelle appeals the trial court's ruling on two grounds. First, she argues the trial court incorrectly characterized $61,000 of the HELOC balance as her separate debt. Second, she argues the court erred by reserving jurisdiction over the remaining $146,926 of HELOC debt rather than equalizing it now. We are not persuaded the court erred. As to the first argument, the court's findings are supported by substantial evidence. As to the second, Rachelle has not convinced us that the court abused its discretion by reserving jurisdiction. Thus, we affirm the judgment.

I

FACTS AND PROCEDURAL HISTORY

Rachelle and Brian married in September 2004, and separated in August 2019. As part of the property division, the parties stipulated that Rachelle had purchased

_____

[1] We use the parties' first names since they share a surname.

the San Clemente property as her separate property. It was purchased for $615,917.86, of which $549,000 was financed by a $488,000 first mortgage (the first mortgage) and a $61,000 second mortgage (the second mortgage). Brian and Rachelle initially lived in the San Clemente property after their marriage, but they later moved out and used it as a rental property.

In 2006, the parties obtained a $150,000 HELOC, which was secured by the San Clemente property. The HELOC was later increased to $250,000 in 2007. At some unspecified point, $61,000 of the HELOC was used to pay off the second mortgage. The HELOC was also used to pay off some credit cards and purchase a car. At trial, the HELOC balance was $207,926.

Rachelle individually filed for bankruptcy in 2011.[2] After her discharge from bankruptcy, the lender stopped charging interest on the HELOC, and Rachelle stopped making payments on it. However, the lien securing the HELOC remained on the San Clemente property. Rachelle has not taken any efforts to have that lien removed.

Trial commenced in June 2021. The parties stipulated that the community had made a $113,976 principal paydown on the San Clemente property during the marriage. "Generally, '[w]hen community property is used to reduce the principal balance of a mortgage on one spouse's separate property, the community acquires a pro tanto interest in the property. [Citations.] This well-established principle is known as "the *Moore*/*Marsden* rule."'" (*In re Marriage of Nelson* (2006) 139 Cal.App.4th 1546, 1552.)[3] Based on the *Moore*/*Marsden* rule, the parties agreed the community had a $113,976 interest in the San Clemente property (*i.e.*, Brian had a $56,988 interest).

---

[2] The briefs are unclear as to when the parties spent the $207,926 in HELOC funds, but it appears they had stopped using the HELOC by the bankruptcy.

[3] The *Moore*/*Marsden* rule is named after the two cases from which it is derived: *In re Marriage of Moore* (1980) 28 Cal.3d 366, and *In re Marriage of Marsden* (1982) 130 Cal.App.3d 426. (*In re Marriage of Nelson*, *supra*, 139 Cal.App.4th at pp. 1552-1553, fn. 5.)

Though the parties agreed on the total amount of the community interest in the property, the specific details of their calculation, known as a *Moore/Marsden* calculation, were not included in the record.

Following trial, the court issued a tentative ruling. The ruling divided the outstanding $207,926 HELOC balance into separate and community debts. It found the $61,000 used to pay the second mortgage was Rachelle's separate debt (the $61,000 payment), while the remaining $146,926 was community debt. The court noted that it was unclear whether the HELOC lender intended to collect the debt. Thus, it did not order equalization of the $146,926 community debt but reserved jurisdiction over it "until further action [was] taken by the lender on" it. (Boldfacing omitted.)

Rachelle filed several objections to the tentative ruling, including an objection to the court's finding that the $61,000 payment was her separate debt. The court rejected her argument at a later hearing. It instructed Brian to draft a proposed statement of decision, and it informed Rachelle that she could file formal objections to the proposed draft.

Brian subsequently filed a proposed statement of decision that largely mirrored the reasoning and language of the court's tentative ruling. Rachelle again filed objections to the proposed statement. She repeated her argument that the $61,000 payment was community debt. She also argued the court should equalize the entire HELOC debt now, rather than reserving jurisdiction over the issue.

The court overruled Rachelle's objections and adopted the proposed statement of decision.[4] The statement of decision found the $61,000 payment was used to pay off the second mortgage. But it explained the $61,000 payment was Rachelle's

---

[4] The trial was presided over by Commissioner Renee Wilson. Commissioner Wilson had retired by the time the court heard Rachelle's objections to the proposed statement of decision. Supervising Judge Julie A. Palafox heard Rachelle's objections and signed the statement of decision on behalf of Commissioner Wilson.

4

separate debt because the community did not benefit from "the repayment of the [second mortgage]." As to the remaining $146,926 of HELOC debt assigned to the community, the court found the lender's "intentions as to any collection of this debt are unknown." Thus, it chose not to "order equalization of said debt . . . and reserve[d] jurisdiction over [it] until further action [was] taken by the lender on [the] lien [securing the debt]."

The court entered judgment on February 9, 2022. Rachelle makes two arguments on appeal. First, she argues the court mischaracterized the $61,000 payment as her separate debt. Second, she asserts the court erred by retaining jurisdiction of the HELOC debt instead of ordering Brian to make an equalization payment. We are not persuaded by either argument.

## II

## DISCUSSION

"On appeal, a judgment of the trial court is presumed to be correct. [Citation.] Accordingly, if a judgment is correct on any theory, the appellate court will affirm it regardless of the trial court's reasoning. [Citations.] All intendments and presumptions are made to support the judgment on matters as to which the record is silent. [Citation.] We presume the trial court followed applicable law." (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956.) ""'Where statement of decision sets forth the factual and legal basis for the decision, any conflict in the evidence or reasonable inferences to be drawn from the facts will be resolved in support of the determination of the trial court decision.'"'" (*Universal Home Improvement, Inc. v. Robertson* (2020) 51 Cal.App.5th 116, 125-126.) On appeal, Rachelle has the burden of showing the trial court erred. (*Starcevic v. Pentech Financial Services, Inc.* (2021) 66 Cal.App.5th 365, 374.) As explained below, she has not met this burden.

5

*A. Characterization of the $61,000 payment*

The court ruled the $61,000 payment was Rachelle's separate debt because the community did not benefit from the payment. Rachelle argues the court's finding is not supported by the record. We disagree.

"Courts typically apply a substantial evidence standard of review to the court's characterization of property as separate or community. [Citations.] In that situation, '[o]ur review is limited to a determination whether there is any substantial evidence, contradicted or uncontradicted, that supports the finding. [Citation.] In so reviewing, all conflicts must be resolved in favor of [the prevailing party] and all legitimate and reasonable inferences must be indulged to uphold the finding.'" (*In re Marriage of Brandes* (2015) 239 Cal.App.4th 1461, 1472.) "''If this 'substantial' evidence is present, no matter how slight it may appear in comparison with the contradictory evidence, the judgment must be upheld.''" (*City of San Buenaventura v. United Water Conservation Dist.* (2022) 79 Cal.App.5th 110, 120.) "'[I]t is of no consequence that the trial court believing other evidence, or drawing other reasonable inferences, might have reached a contrary conclusion.'" (*Jameson v. Five Feet Restaurant, Inc.* (2003) 107 Cal.App.4th 138, 143, italics omitted.) "The substantial evidence standard of review is generally considered the most difficult standard of review to meet . . . because it is not the function of the reviewing court to determine the facts." (*In re Michael G.* (2012) 203 Cal.App.4th 580, 589.)

Prior to addressing the court's factual findings, we note that Rachelle does not challenge its legal conclusion that the $61,000 payment would be her separate debt if the community did not benefit from the payment. The court applied the correct legal rule. (See *In re Marriage of Beltran* (1986) 183 Cal.App.3d 292, 294 ["[T]he community is entitled to reimbursement when community funds are used to pay one spouse's separate debt"].)

6

Next, we find the trial court's finding that the $61,000 payment did not benefit the community is supported by substantial evidence. It is undisputed the San Clemente property is Rachelle's separate property. Because the $61,000 payment reduced her separate property debt, the court could infer it did not benefit the community. (See *In re Marriage of Beltran*, *supra*, 183 Cal.App.3d at p. 294.)

Here, the only way the $61,000 payment could be characterized as community debt is if it was included in the parties' stipulated *Moore/Marsden* calculation, which determined the community had a $113,976 interest in the San Clemente property. If that were the case, then the community would have benefited from the $61,000 payment. But nothing in the record shows the parties agreed to include the $61,000 payment in the $113,976 community interest. Indeed, Rachelle concedes the details of the parties' *Moore/Marsden* calculation "were not included into [*sic*] the trial record."

Nor does anything in the record persuasively show the parties agreed to include the $61,000 payment in the $113,976 community interest. Rather, the parties appear to have compromised on this amount without agreeing to a specific calculation. During trial, the court asked the parties to explain their respective *Moore/Marsden* calculations for the $113,976 community interest. Rachelle's counsel, Stephane Quinn, stated he had calculated a community interest of $113,976 ($56,988 to each party), which included the $61,000 payment. Initially, Brian's counsel, Grace Ogburn, asserted a $204,753 community interest, which included improvements and debt service on the San Clemente property. The court asked Ms. Ogburn to explain her calculation. But when she attempted to walk the court through her math, she somehow arrived at much lower community interest of $57,040 ($28,520 to each party).

The court noted that Ms. Ogburn's calculation was lower. Since a lower calculation would be more beneficial to Rachelle, her counsel, Mr. Quinn stated he would

7

accept and adopt Ms. Ogburn's calculation. But Ms. Ogburn replied, "obviously, I have an error there."

Ms. Ogburn attempted to locate the error in her calculation, asking, "perhaps Mr. Quinn can go through his numbers so I can see where my math is off." But the court explained, "you are not going to be able to do that because I'm positive [Mr. Quinn] didn't roll in any improvements." Counsel began discussing their respective calculations, but the court interjected, stating, "why don't we just make it the $56,000 [to each party] and be done with this?" It continued, "if we go -- you know, with Mr. Quinn's number of [$]56,988 -- [to each party] . . . , and that will include everything, I think . . . it's an equitable amount." Both parties accepted the court's recommendation and stipulated to the $113,976 community interest. But they did not discuss the specific sums to be included in that total. Nor does there appear to be any agreement as to what specific sums would be included in that amount.

Rachelle also claims the court's ruling that the community did not benefit from the $61,000 payment is inconsistent with its statements during trial. Specifically, she asserts the court stated during trial that the $61,000 payment was a principal paydown, entitling the community to a $61,000 interest in the San Clemente property. But the statements she cites are ambiguous at best. She cites a discussion between the parties as to whether certain HELOC funds should be considered part of the mortgage for the San Clemente property. Rachelle believed they should, while Brian disagreed. The court agreed with Brian. It stated HELOC funds used to pay for the San Clemente property were not part of the mortgage but were "a principal pay-down." The court explained the community was "entitled to the principal pay-down from the time [Brian and Rachelle] were both paying [the mortgages on the San Clemente property] with their community funds" until "such time as . . . [they] stopped paying on it."

8

Significantly, though, the court did not state the $61,000 payment was part of the community's principal paydown on the San Clemente property. Instead, the court appears to have stated the $61,000 payment was Rachelle's separate debt.

The Court: "Well, if you look at the HELOC – how much is owed now?"

Ms. Ogburn: "[$207,000] , according to [the lender]."

The Court: "Then you have to subtract from it the amount that she paid to pay off the [the second mortgage] which is her separate property."

Ms. Ogburn: "Right."

The Court: "That was [$]60,000, so you are left with what?"

Ms. Ogburn: "146 – is what I'm coming up with. [$]146,000."

The Court: "Divide that by two."

Ms. Ogburn: "[$73,000] each."

Mr. Quinn: "I'm not following the court's math. [¶] Even if she paid the second [mortgage], so what? They still owe the money."

The Court: "You are asking me to attribute – you're saying this is a HELOC, that is a community property debt. And therefore, *if she used community property to pay off separate property, she doesn't get credit for that*."

Mr. Quinn: "I understand."

The Court: "So if you take what she -- the total amount that she pulled out of that HELOC -- if it's $167,000, and she paid off $67,000 for her separate property -- which we all concede it's her separate property -- all that's left is $100,000, which is subject to a community property debt. *Because she can't pull out community money and then use it to pay her separate property*." (Italics added.)

Regardless, even if the court stated during trial that the $61,000 payment should be included in the parties' *Moore/Marsden* calculation, this was not a final ruling. The court's final ruling is the judgment, and the statement of decision contains the court's "view of facts and law of the case." (*In re Marriage of Ditto* (1988) 206 Cal.App.3d 643,

9

646-647; *Horning v. Shilberg* (2005) 130 Cal.App.4th 197, 203.) The court's oral statements during trial do not "'restrict the power of the judge to declare his [or her] final conclusion in his [or her] findings of fact and conclusions of law. [Citation.] The findings and conclusions constitute the final decision of the court and an oral or written opinion cannot be resorted to for the purpose of *impeaching* or gainsaying the findings and *judgment*.'" (*In re Marriage of Ditto*, at pp. 646-647.)

We are sympathetic to Rachelle's argument that the parties intended to include the $61,000 payment in the community's $113,796 interest in the San Clemente property. The record is not clear on this point, and parts of it could be read to support her argument. But substantial evidence review guides our analysis. Based on the record and the standard of review, we must infer the $61,000 payment was not included in the $113,796 community interest. (See *In re Marriage of Brandes*, *supra*, 239 Cal.App.4th at p. 1472; *Universal Home Improvement, Inc. v. Robertson*, *supra*, 51 Cal.App.5th at pp. 125-126.)

## B. *Reservation of Jurisdiction over HELOC Debt*

Courts have discretion to reserve jurisdiction to divide and value a community asset or debt at a later date. (*In re Marriage of Moore* (2014) 226 Cal.App.4th 92, 99-100.) They likewise have discretion to reserve jurisdiction over the equalization of an asset or debt at a later date. (See *In re Marriage of Colvin* (1992) 2 Cal.App.4th 1570, 1578.) Here, the court found the community responsible for $146,926 of the HELOC debt. However, instead of ordering Brian to make an equalization payment to Rachelle for this debt, the court reserved jurisdiction over the issue until the lender took action to collect the debt. It explained, "[t]he testimony is that no amounts have been paid to [the lender] since the bankruptcy nor has the bank attempted to collect. [The lender's] intentions as to any collection of this debt are unknown."

10

We review the court's ruling for an abuse of discretion. (See *In re Marriage of Munguia* (1983) 146 Cal.App.3d 853, 858-859; see also, e.g., *Stump's Market, Inc. v. Plaza de Santa Fe Limited, LLC* (2013) 212 Cal.App.4th 882, 889-890 (*Stump's Market*).) "The abuse of discretion standard is not a unified standard; the deference it calls for varies according to the aspect of a trial court's ruling under review. The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious."[5] (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711-712, fns. omitted.)

Rachelle argues the court erred by finding that the HELOC lender has not taken any action to collect the HELOC debt. We disagree. The court's finding is supported by substantial evidence. It is undisputed that (1) the HELOC debt is no longer accruing interest due to the bankruptcy, (2) Rachelle is not making any payments on the debt, and (3) she has no current obligation to make payments on the debt. Further, the evidence at trial showed the lender has not made any recent attempts to collect the HELOC debt.

Rachelle contends the lien on the San Clemente property is an action by the lender to collect the HELOC debt. Due to the lien, she claims the HELOC debt will necessarily be repaid when the San Clemente property is sold or refinanced. But this lien has been on the San Clemente property since 2006, prior to the bankruptcy. We have not been cited any evidence showing the lender has attempted to foreclose on the lien or otherwise collect the outstanding HELOC debt. We do not know whether the San

---

[5] Rachelle acknowledges case law indicating abuse of discretion is the proper standard, but she argues for de novo review because the facts are undisputed and her appeal raises a question of law. We disagree. Her appeal challenges the court's findings of fact and its application of the law to those facts.

Clemente property will ever be sold or refinanced. Thus, we cannot say the court acted arbitrarily or capriciously in reserving jurisdiction over the debt rather than equalizing it.

We are unpersuaded by Rachelle's analogy to *Stump's Market*. *Stump's Market* involved a landlord-tenant dispute, not a divorce. In divorce cases, courts are expressly permitted to reserve jurisdiction to ensure community property is equally divided. (See Fam. Code, § 2550; *In re Marriage of Colvin*, *supra*, 2 Cal.App.4th at p. 1578.) In such cases, "[r]etention of jurisdiction is a valuable and resilient tool to accommodate difficult cases where future events must be taken into account [citation] and where further consideration of all the equities is of importance." (*In re Marriage of Vanderbeek* (1986) 177 Cal.App.3d 224, 237.) Also, in *Stump's Market*, the trial court's judgment determined all the disputes between the parties. There were no future events requiring reservation of jurisdiction. (*Stump's Market*, *supra*, 212 Cal.App.4th at pp. 892-893.) Not so here. It is uncertain whether the HELOC debt will ever be paid. Thus, reservation of jurisdiction is not unreasonable until the lender takes action to collect the HELOC debt. (*In re Marriage of Barth* (2012) 210 Cal.App.4th 363, 374 ["An abuse of discretion is only demonstrated when no reasonable judge could have made the challenged order"].)

Finally, Rachelle asserts she will suffer prejudice if the HELOC debt is not equalized now. Among other things, she cannot offset Brian's share of the HELOC debt against the $192,880 she owes him. She worries if the lender collects the HELOC debt in the future, Brian may not have funds to reimburse her for his share. However, as the trial court found, it is unknown whether the HELOC debt will ever be paid or what Brian's financial situation will be if and when it is. Brian might also be prejudiced if he is required to make an equalization payment now and Rachelle never pays the HELOC debt or pays it at a discount. Due to these factors, we cannot say it was unreasonable for the court to reserve jurisdiction until the lender takes further action on the lien.

12

### III

### DISPOSITION

The judgment is affirmed.  Brian is entitled to his costs on appeal.


MOORE, J.

WE CONCUR:


O'LEARY, P. J.


GOETHALS, J.